**NATIONAL TOWER, LLC and Omnipoint Communications MB OPS, LLC**

v.

**Frank A. FREY, Jr., Walter S. Lewicki, Leland Sullivan, Clay Conrad and Philip Sias, in Their Capacity as Members of the Town of Plainville Zoning Board of Appeals and Not Individually**

**No. CIV.A.00–12396–RGS.**

United States District Court, D. Massachusetts.

Sept. 12, 2001.

Brian C. Levey, Bowditch & Dewey, LLP, Framingham, MA, for National Tower, LLC, Omnipoint Communications, Inc.

John P. Lee, Attleboro, MA, for Plainville Zoning Bd. of Appeals.

*MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT*

STEARNS, District Judge.

America's love affair with the cellular telephone has become a staple of federal

litigation. Despite an ardent embrace of these portable, wireless and increasingly sophisticated devices, many Americans abhor the often unsightly transmission towers that seem to sprout like weeds after a summer rain. The resistance to the location of cellular telephone towers led Congress to enact the Telecommunications Act of 1996, which, while preserving the primacy of local governments in zoning matters, severely limits their ability to use zoning laws to impede the growth of this new technology. Significantly, the Act prohibits local authorities from taking any action that has the effect of banning altogether the placement of cellular transmission towers in their respective communities. 47 U.S.C. § 332(c)(7)(B)(i)(II).

In June of 2000, plaintiffs National Tower and Omnipoint Communications (collectively Omnipoint) applied to the Zoning Board (Board) of the Town of Plainville for dimensional and use variances in order to erect a 170 foot "lattice" transmission tower on approximately 5,000 square feet of a two and one-half acre parcel at 75 Washington Street in Plainville (the locus). Omnipoint's objective was to remedy a two mile (non-contiguous) gap in its cellular coverage along Highway Routes 1 and 106. The locus lies in a General Commercial District (in By-law parlance a "CB District"), and is partially covered by a Watershed Protection Overlay District. Under the By-law, a radio tower is a prohibited use in a CB District. Moreover, a structure in a CB District may not exceed two stories in height. Nonetheless, both use and dimensional variances may be granted by the Board for reasons consistent with the state zoning law. *See* M.G.L. c. 40A, §§ 10, 14. Similarly, the Board may grant a special use permit in a Watershed Protection District so long as it determines that there will be no adverse impact on the watershed as a result. By-law § 3.12.5.

Omnipoint conducted computer simulations and drive tests to identify possible sites for a tower to rectify the break in its coverage. An investigation of the sites thus identified led to the selection of the locus. All other possible sites were in the same general area and therefore subject to the same zoning restrictions as the locus.

Omnipoint's application for the use and dimensional variances was initially heard by the Board on July 18, 2000. Midway through the hearing, the Board determined that it had been mistaken in publishing notice of a proposed siting of a "radio tower" on the locus. The Board voted to suspend the hearing and readvertise the tower as a "public utility" (a permitted use in a CB District). The hearing resumed on September 26, 2000, with Omnipoint pressing its case for a dimensional variance.

Meanwhile, on August 24, 2000, Omnipoint filed an application for a special watershed permit. The hearing on this application was held on October 3, 2000. As at the hearing on the application for the dimensional variance, the Board gave no indication that it might not grant the permit. But on October 17, 2000, the Board unanimously rejected both applications. As to the request for the variances, the Board stated:

> [a]s the basis for its denial of the variances is that it has no legal authority to grant them, the Board made no further findings with respect to other objections made to the construction of such facility, particularly as to whether there exists any other location in the Town where such construction is permitted under the Zoning By-law.

Parisi Aff., at 16. The reasons given for the rejection of the watershed permit were nearly as terse.

On this date, the Board denied the variances requested by the applicant on the

grounds that in the underlying CB Zoning District a wireless communications facility is not a use permitted as a matter of right or a use permitted by special permit and that a use variance, which would be required for the construction of such facility, is not permitted under the Zoning By-law ... Accordingly, it is not permitted by special permit in the overlay Watershed Protection District as the proposed use must meet the zoning requirements of both the underlying district and the overlay district.

*Id.*, at 18.

On November 20, 2000, Omnipoint brought suit in federal district court seeking a reversal of the decision of the Board. After a period of discovery, Omnipoint filed a motion for partial summary judgment and a prayer for an injunction directing the Board to issue the necessary variances and permit. An opposition was filed by defendants, and a hearing on the motion was held on September 5, 2001.

## DISCUSSION

▆▆▆ Omnipoint recognizes that to invoke the "NIMBY" provisions of the Telecommunications Act, it must prove that the "Town's zoning policies and decisions [have resulted] in a significant gap in wireless services in the Town," and that the Town by its actions has made clear that any reasonable efforts by Omnipoint to appease the Town or address its concerns "are so likely to be fruitless that it is a waste of time even to try." *Omnipoint Communications MB Operations, LLC v.*

*Town of Lincoln*, 107 F.Supp.2d 108, 117 (D.Mass.2000), quoting *Amherst, N.H. v. Omnipoint Communications*, 173 F.3d 9, 14 (1st Cir.1999). That a gap in Omnipoint's coverage exists in Plainville is not a matter of factual dispute.[1]

With regard to the second required showing, Omnipoint relies on the fact that it has demonstrated that no feasible alternative exists to the rejected locus. In other words, further application to the Board would be futile because there is no other available site that is not subject to the same zoning restrictions that caused the Board to deny Omnipoint's applications. This argument has support in First Circuit cases, most notably in *dicta* in *Amherst, N.H., id.*, at 14 ("Were Omnipoint's existing proposal the only feasible plan, then prohibiting its plan might amount to prohibiting personal wireless service").[2]

Reinforcing the aura of futility in this case is the Board's off-and-on-again classification of Omnipoint's cellular transmission tower as a prohibited "radio tower." The By-law defines a radio tower as a "[p]remises used for the commercial transmission of radio or television, not including studios," which Omnipoint argues a cellular transmission tower literally is not, while a permitted "public utility" is defined as a "[u]tility licensed by the Department of Public [Utilities]" (now the Department of Telecommunications and Energy), which Omnipoint argues it is, and by extension, so is its tower. The Board's change in stance might be seen as evidence of a visceral hostility to the siting of a 170 foot tower, or it might be regard-

---

1. A two mile gap in coverage along two heavily traveled state highways carrying 27,000 vehicles a day, as attested in the Luutu affidavit, is clearly "significant," notwithstanding defendants' unexplained scepticism.

2. The "no alternative site" theory of effective prohibition might prove troubling where the only suitable available site has sensitive historical or environmental importance, although one would suppose that in such a case the National Environmental Policy Act would trump the NIMBY provisions of the Telecommunications Act. In any event, no contention is made that the locus is a site of environmental or historical significance.

ed as a principled determination that the July decision had been erroneous. Whether "radio tower" or "public utility" more fairly describes Omnipoint's "wireless communications facility" seems pretty much of a draw, although the readherence to the former description explains why the Board concluded that "it ha[d] no legal authority to grant [the variances and permit]."[3] Whatever the reason, Omnipoint is left with a serviceable site and a service gap, but without the necessary variances and permit to build a tower and no prospects of obtaining them. It is therefore "effectively prohibited" from providing seamless wireless service in Plainville. *See* 47 U.S.C. § 332(c)(7)(B)(i)(II).

 Contrary to the Town's argument, the Act's NIMBY provisions are not simply directed to general bans on towers. They may be violated by a single zoning decision that in effect prohibits a provider from achieving seamless coverage. *Amherst, N.H.*, 173 F.3d at 14. A town, in other words, cannot evade the mandate of the Act by pointing to the fact that anoth-

er provider has succeeded in supplying full coverage to the town.[4]

 This case illustrates an important lesson for service providers and zoning boards locked in dispute over the siting of a transmission tower. While it is true, as the Board argues, that a plaintiff bears a heavy burden of proving a violation of the Act, a zoning board cannot simply rest on this legal principle when confronting a motion for summary judgment. Although a local zoning board does not bear the burden of proving that a suitable alternative site in fact exists, *Southwestern Bell Mobile Systems, Inc. v. Todd*, 244 F.3d 51, 63 (1st Cir.2001), Plainville has done nothing to controvert Omnipoint's showing to the contrary. *Southwestern Bell*, on which the Board pins its case, is readily distinguishable. In *Southwestern Bell*, the service provider, unlike Omnipoint, failed to present evidence that it had undertaken an investigation to determine whether alternative sites in fact existed. When a provider successfully shoulders this burden, the showing "may be sufficient to support

---

**3.** At oral argument, Omnipoint conceded that the Board's decision is not vulnerable under the "substantial evidence" test of the Telecommunications Act as it "was based strictly on a legal interpretation of the By-law which required no reliance on facts to support it," and therefore constituted an "informed judgment" to which the court must accord deference. *Omnipoint Communications v. Town of Lincoln*, 107 F.Supp.2d at 116. The deference test governing a substantial evidence claim does not, however, preclude an adverse finding on an effective prohibition claim, as the latter issue must be resolved *de novo*. *Amherst, N.H.*, 173 F.3d at 16 n. 7.

**4.** The Telecommunications Act provides that local zoning authorities "shall not unreasonably discriminate among providers of functionally equivalent services." 47 U.S.C. § 332(c)(7)(B)(i)(I). Congress's obvious intent in inserting this provision was to foster competition. Thus, in determining whether a significant gap in coverage exists, or whether

a town has effectively banned the placement of cellular towers, a court must look solely to the circumstances of the provider whose efforts to build have been thwarted by a zoning board. Omnipoint does complain that the Board acted discriminatorily in permitting AT & T Wireless to build a 195 foot tower in another section of Plainville. Omnipoint claims that the Board justified its decision by classifying AT & T's tower as a "radio tower" (permitted in the district where AT & T located), when, according to Omnipoint, AT & T's tower is a "wireless communications facility" which "is not permitted as a matter of right or by special permit." Plaintiffs' Memorandum, at 16. From this Omnipoint gleans unreasonable favoritism on the Board's part towards AT & T. In fact, the term "wireless communications facility" is used nowhere in the By-law. The term is instead derived from the Telecommunications Act itself, and, by all evidence, is used by the Board as a casual synonym for "radio tower."

an allegation that the zoning board's permit denial effectively prohibits personal wireless services in the area." *Id.* The holding in *Southwestern Bell,* in other words, does not suspend the usual rules governing summary judgment. Confronted with Omnipoint's evidence that no alternative site exists, the Board's obligation was either to show that Omnipoint's evidence was factually insufficient, or to come forward with evidence of its own demonstrating a trialworthy dispute. The Board did neither.[5]

While the Telecommunications Act does not specify a remedy for a violation, where a showing has been made that a further application to a Board would be futile, injunctive relief is the preferred remedy, given the Act's stated objective of expediting judicial review. 47 U.S.C. § 332(c)(7)(B)(v). *See also Brehmer v. Planning Board of the Town of Wellfleet,* 238 F.3d 117, 121 (1st Cir.2001).

### ORDER

For the foregoing reasons, plaintiff's motion for partial summary judgment is *ALLOWED.* The Zoning Board is *ORDERED* to issue within thirty (30) days of this Order the dimensional and use variances and special permit necessary for the construction of plaintiffs' 170 foot lattice tower and maintenance facility on the locus at 75 Washington Street in Plainville. The Board may condition the issuance of the variances and permit on plaintiffs' compliance with such reasonable environmental conditions as are necessary to insure the protection of the Town's watershed during

the construction and operation of the tower.

SO ORDERED.

---

5. A word of caution is in order for Omnipoint as well. The evidence presented to the court on the lack of a feasible alternative site, while well supported by computer simulations demonstrating that the locus is the most desirable site (from Omnipoint's perspective) for its tower, is very thin in its explanation of the investigation that was undertaken to eliminate other potential sites. *See* Luutu Affidavit, at ¶ 13 ("I am informed and believe that ... there are no other feasible sites"). While Omnipoint alludes to the reluctance of owners of other sites to enter into a lease, no specific evidence is offered on this point.