# United States Court of Appeals

## For the First Circuit

_____

No. 01-2472

NATIONAL TOWER, LLC; OMNIPOINT COMMUNICATIONS, INC.,

Plaintiffs, Appellees,

v.

PLAINVILLE ZONING BOARD OF APPEALS, FRANK A. FREY JR.,
WALTER S. LEWICKI, CLAY CONRAD, PHILIP SIAS, LELAND SULLIVAN,

Defendants, Appellants.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

_____

Before

Selya, Lynch, and Howard, Circuit Judges.

_____

John P. Lee with whom Maureen A. Lee was on brief for
appellants.

Brian C. Levey with whom Marisa L. Pizzi and Bowditch &
Dewey, LLP were on brief for appellees.

_____

July 18, 2002

_____

**LYNCH, Circuit Judge**.  The federal courts now routinely hear cases brought under the Telecommunications Act of 1996 by those who wish to construct cellular antenna towers and have been denied permission to do so by local town officials.  Here, the Zoning Board of Appeals of the Town of Plainville, Massachusetts denied the needed zoning permits and variances to National Tower and Omnipoint Communications (collectively "Omnipoint").

Omnipoint sued under 47 U.S.C. § 332(c)(7)(B)(v), which provides a federal cause of action to a person adversely affected by a state or local decision that violates the 1996 Act.  It also raised claims under state law and under 42 U.S.C. § 1983.  The district court found that defendants had violated the Act, and granted Omnipoint partial[1] summary judgment.  Nat'l Tower, LLC v. Frey, 164 F. Supp. 2d 185 (D. Mass. 2001).  The court concluded that the actions of the board effectively prohibited the provision of seamless wireless service in Plainville in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II).  As a remedy, the court ordered issuance of the variances and permit.  We affirm.

I.

Because the district court granted summary judgment, we review the facts taking all inferences in the light most favorable to the board.  Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 42 (1st Cir. 2002).  The material facts as set forth in the

---

[1]    Although the district court's order granted only partial summary judgment, this court determined on December 14, 2001, that the judgment was effectively final, and therefore permitted this appeal to proceed.

district court's opinion are essentially undisputed, and so we adopt them and add some others from the record. The parties do, however, dispute the inferences to be drawn from those facts.

In June 2000, Omnipoint applied to the board for variances from the dimensional by-laws (prohibiting both multiple uses on one lot and structures over two stories) and from the by-law prohibiting radio transmission use. Omnipoint needed these variances in order to erect a 170-foot-tall "lattice" transmission tower on approximately 5000 square feet of a two-and-one-half-acre parcel at 75 Washington Street in Plainville. The site abuts property owned by the New England Power Company, which contains electric transmission lines and poles and is developed for public utility use.

Omnipoint's objective was to close a two-mile (non-contiguous) gap in its cellular coverage along the heavily traveled highway Routes 1 and 106. In the vicinity of the coverage gap, approximately 17,000 vehicles travel daily along Route 1 and 10,000 along Route 106. Because of the gap in coverage, a cellular user either cannot connect or cannot maintain a connection. The proposed site lies in a General Commercial District (a "CB District"), and is partially covered by a Watershed Protection Overlay District. Under the town by-law, a radio tower is a prohibited use in a CB District and requires a special permit in a Watershed Protection District. Plainville, Mass. Zoning By-law ch. III, § 2.8 (1999). Moreover, a structure in a CB District may not exceed two stories in height. An engineer working for Omnipoint

-3-

testified, and the board does not dispute, that a two-story tower in compliance with the by-law would not close the gap. The board may, however, grant both use and dimensional variances for reasons consistent with the state zoning law. See Mass. Gen. Laws ch. 40A, §§ 10, 14 (2000). Similarly, the board may grant a special use permit in a Watershed Protection District so long as it makes certain findings, primarily that there will be no adverse impact on the watershed as a result. By-law ch. III, § 3.12.5.

Omnipoint conducted computer simulations and drive tests to identify possible sites for a tower to rectify the break in its coverage. An investigation of the sites thus identified led to the selection of the disputed site. All other possible sites were in the same general area and therefore subject to the same zoning restrictions.[2] This evidence was submitted to the board, primarily through Omnipoint's application for the use and dimensional variances. In its initial application Omnipoint characterized its tower as a wireless communications facility. It sought the needed permits and variances, which the by-law permitted the town to grant. See By-law ch. III, § 1.4.3.

The board published the requisite notice in a local newspaper, characterizing the application as being for a "radio tower." It held a hearing to consider the application on July 18. Midway through the hearing, the board determined that it had been mistaken in publishing notice of a proposed siting of a "radio

---

[2] The record does not make clear whether the other potential sites were within the Watershed Protection District.

-4-

tower" on the site.  The board voted to suspend the hearing and readvertise the tower as a "public utility" (a permitted use in a CB District).  The hearing resumed on September 26, with Omnipoint pressing its case for a dimensional variance.  Omnipoint presented evidence of the coverage gap and evidence that it said showed there were no other suitable sites.  The board at the hearing articulated no objections to the application, although several owners of abutting property did object.

Meanwhile, on August 24, 2000, Omnipoint filed an application for a special watershed permit.  The hearing on this application was held on October 3, 2000.  As at the hearing on the application for the dimensional variance, the board gave no indication that it might not grant the permit.

On October 17, the board unanimously rejected both applications.  The board sent Omnipoint two letters dated October 27 explaining its decision.  As to the request for the variances, the first letter stated:

> In denying the variances, the Board found that in a CB Zoning District a wireless communications facility is not a use permitted as a matter of right or a use permitted by special permit and that a use variance, which would be required for the construction of such is not permitted under the Zoning By-Law.  In this respect, the Board notes that Chapter 40A, Section 10 of the General Laws, provides in relevant part as follows:
>
>> "Except where local ordinances or by-laws shall expressly permit variances for use, no variance may authorize a use or activity not otherwise permitted in the district in which the land or structure is located."
>
> The Zoning By-Law makes no provision for use variances. As the basis for its denial of the variances is that it has no legal authority to grant them, the Board made no

further findings with respect to other objections made to the construction of such facility, particularly as to whether there exists any other location in the Town where such construction is permitted under the Zoning By-Law.

The reasons given in the second letter for the rejection of the watershed permit were as terse:

On this date, the Board denied the variances requested by the applicant on the grounds that in the underlying CB Zoning District a wireless communications facility is not a use permitted as a matter of right or a use permitted by special permit and that a use variance, which would be required for the construction of such facility, is not permitted under the Zoning By-Law. The construction of a wireless communications facility is clearly not permitted in the underlying CB Zoning District. Accordingly, it is not permitted by special permit in the overlay Watershed Protection District as the proposed use must meet the zoning requirements of both the underlying district and the overlay district.

This lawsuit, and appeal, followed.

II.

The board appeals the order against it, making three arguments. It says the district court erred in granting Omnipoint's motion for partial summary judgment on the facts in this case because, first, the board's decisions do not prohibit or have the effect of prohibiting the provision of wireless services in the town; second, the board's decisions are supported by substantial evidence in a written record; and, third, the board's decisions do not unreasonably discriminate among providers of functionally equivalent services.

We reach only the first two of these arguments.

A.  <u>General Standards</u>

The Telecommunications Act is an exercise in cooperative federalism and represents a dramatic shift in the nature of telecommunications regulation. See generally Cablevision of Boston v. Pub. Improvement Comm'n, 184 F.3d 88, 97-100 (1st Cir. 1999). The Act attempts, subject to five limitations, to preserve state and local authority over the placement and construction of facilities. 47 U.S.C. § 332(c)(7)(A)-(B) (1994 & Supp. II 1996); Town of Amherst, N.H. v. Omnipoint Communications Enters., 173 F.3d 9, 12 (1st Cir. 1999). Several of those limiting provisions apply to this case.

The first relevant limitation, set forth in subsection (B)(i), provides that in regulating the placement and construction of facilities, a state or local government or instrumentality "shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II). It is undisputed that in this case there is a significant coverage gap. The argument that no tower is needed is unavailable to the town. Several courts have held that local zoning decisions and ordinances that prevent the closing of significant gaps in the availability of wireless services violate the statute. See Cellular Tel. Co. v. Zoning Bd. of Adjustment, 197 F.3d 64, 68-70 (3d Cir. 1999); Sprint Spectrum L.P. v. Willoth, 176 F.3d 630, 643 (2d Cir. 1999); Omnipoint Communications MB Operations, LLC v. Town of Lincoln, 107 F. Supp. 2d 108, 117 (D. Mass. 2000). Finding

their reasoning persuasive, we now join their number and will analyze Omnipoint's claim with that standard in mind.

The second limitation requires the local government to "act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed . . . taking into account the nature and scope of such request." 47 U.S.C. § 332(c)(7)(B)(ii). Similarly, a reviewing court must hear and decide the action "on an expedited basis." Id. § 332(c)(7)(B)(v). The third states that the denial of a request must be in writing and supported by substantial evidence contained in a written record. Id. § 332(c)(7)(B)(iii). The fourth authorizes judicial review of either final action or a failure to act by the local government that is inconsistent with statutory requirements and limitations. Id. § 332(c)(7)(B)(v).[3]

There is tension between two objectives of the Act: the objective "to facilitate nationally the growth of wireless telephone service," and the objective "to maintain substantial local control over siting of towers"; this and other courts have attempted to achieve the proper balance. Amherst, 173 F.3d at 13. The principles announced in our opinions provide guidance as to that balance. The first limitation -- that a town may not through its decisions have "the effect of prohibiting" wireless service --

_____

[3] Another provision prohibits unreasonable discrimination among providers of functionally equivalent services. Id. § 332(c)(7)(B)(i)(I). Although Omnipoint alleges such discrimination, we do not need to reach this issue.

raises the question whether the statute refers only to a blanket ban or whether it may, depending on the facts, encompass individual application decisions. This court has resolved that question and read the statute to encompass individual decisions:

> [o]bviously, an individual denial is not automatically a forbidden prohibition violating the "effects" provision. But neither can we rule out the possibility that -- based on language or circumstances -- some individual decisions could be shown to reflect, or represent, an effective prohibition on personal wireless service.

Id. at 14. The effective prohibition clause can be violated even if substantial evidence exists to support the denial of an individual permit under the terms of the town's ordinances. The burden is on the proponent of the tower to show "that further reasonable efforts are so likely to be fruitless that it is a waste of time even to try." Id.

Similarly, this court has resolved the tension between the recognition that local authorities are frequently lay member boards without many resources and the recognition that the Act provides for judicial review based on a written decision, supported by "substantial evidence" in a "written record." The balance struck is that we do not require formal findings of fact or conclusions of law in a board's written decision. Nor need a board's written decision state every fact in the record that supports its decision. S.W. Bell Mobile Sys. v. Todd, 244 F.3d 51, 59-60 (1st Cir. 2001). By the same token, the board, in its decision, may not hide the ball. Its written denial must contain a sufficient explanation of the reasons for the denial "to allow a

reviewing court to evaluate the evidence in the record supporting those reasons."  Id. at 60.

We now make explicit another aspect of judicial review of local decisions.  A board may not provide the applicant with one reason for a denial and then, in court, seek to uphold its decision on different grounds.  That result follows not only from the requirement that the decision provide an adequate explanation to support judicial review, but also from the background understanding of the model of judicial review of administrative actions against which the Act was enacted.  See H.R. Conf. Rep. No. 104-458, at 208 (1996), reprinted in 1996 U.S.C.C.A.N. 124, 223 ("The phrase 'substantial evidence contained in a written record' is the traditional standard used for judicial review of agency actions.").  That model customarily prohibits a court from affirming an agency on grounds other than those the agency gave in its decision.  FEC v. Akins, 524 U.S. 11, 25 (1998); Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 50 (1983); SEC v. Chenery Corp., 318 U.S. 80, 88 (1943) ("If an order is valid only as a determination of policy or judgment which the agency alone is authorized to make and which it has not made, a judicial judgment cannot be made to do service for an administrative judgment.").

The analogy of a local zoning board to a federal administrative agency for judicial review purposes has its limits, however.  When a federal court refuses to uphold a federal agency's decision based on reasons the agency has advanced only after the fact, the court will ordinarily remand to the agency for further

action.  If the agency chooses, it may then reach the same result and defend it with new reasons.  See Akins, 524 U.S. at 25 (noting that a reviewing court unsatisfied with the reasons given for an agency's decision "will set aside the agency's action and remand the case -- even though the agency . . . might later, in the exercise of its lawful discretion, reach the same result for a different reason").  Courts remand to agencies in such cases because, among other reasons, Congress has committed to the agency the task of policymaking where the governing statute is not clear.  See Chenery, 318 U.S. at 88 ("For purposes of affirming no less than reversing its orders, an appellate court cannot intrude upon the domain which Congress has exclusively entrusted to an administrative agency.").

Although Congress in the Telecommunications Act left intact some of local zoning boards' authority under state law, we do not think it meant to provide for them as much deference as a federal agency receives, nor to give them new policymaking authority under the Act.  The statutory requirements that the board act within "a reasonable period of time," and that the reviewing court  hear and decide the action "on an expedited basis," indicate that Congress did not intend multiple rounds of decisions and litigation, in which a court rejects one reason and then gives the board the opportunity, if it chooses, to proffer another.  Instead, in the majority of cases the proper remedy for a zoning board decision that violates the Act will be an order, like the one the district court issued in this case, instructing the board to

-11-

authorize construction.  See Brehmer v. Planning Bd., 238 F.3d 117, 120-22 (1st Cir. 2001) (discussing and approving decisions by the majority of district courts granting injunctive relief in Telecommunications Act cases); Cellular Tel. Co. v. Town of Oyster Bay, 166 F.3d 490, 497 (2d Cir. 1999) (same).

In short, a board's decision may not present a moving target and a board will not ordinarily receive a second chance.  In addition to preventing undue delay, this approach gives the applicant a fair chance to respond to the board's reasons, and perhaps satisfy the board, without first having, literally, to make a federal case out of the dispute.  Thus, we will not uphold a board's denial of a permit on grounds that it did not present in its written decision.  As we discuss later, however, the appropriate remedy in that situation may not always be an injunction, but may sometimes be a remand, depending on the nature of the board's decision and the circumstances of the case.

Apart from its instructions to local zoning authorities, Congress has also specified the terms of judicial review.  These terms themselves amount to an allocation of decisional authority between the local boards and the federal courts.  The standards by which district courts, and this court, review state and local decisions under the Act are not unitary.  The scope of judicial review depends on the nature of the issue presented and the statutory limitation involved.

The anti-prohibition, anti-discrimination, and unreasonable delay provisions, 47 U.S.C. § 332(c)(7)(B)(i)-(ii),

-12-

present questions that a federal district court determines in the first instance without any deference to the board.  Any or all of these questions may well require evidence to be presented in court that is outside of the administrative record compiled by the local authority.  <u>Amherst</u>, 173 F.3d at 16 n.7.  If the district court then grants summary judgment, our review of the grant is de novo as well.  <u>Id.</u> at 15.  If the district court makes evidentiary findings on such claims that go beyond the administrative record, then we will review its factual findings for clear error and its legal conclusions de novo.

By contrast, where judicial review is on the issue of whether the board's written decision is supported by substantial evidence in the record, then judicial review is confined to the administrative record, absent a claim of procedural irregularity.  The board, then, not the court, is the focus of the decisionmaking process.  In this inquiry, the substantial evidence standard of review for the district court is the same that the courts have applied in certain reviews of administrative action.  <u>S.W. Bell</u>, 244 F.3d at 58-59.  "Substantial evidence" review is that standard articulated in <u>Universal Camera Corp.</u> v. <u>NLRB</u>, 340 U.S. 474 (1951), and applied in <u>Penobscot Air Servs., Ltd.</u> v. <u>FAA</u>, 164 F.3d 713 (1st Cir. 1999):

> Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  The reviewing court must take into account contradictory evidence in the record.  But "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."

Id. at 718 (quoting Universal Camera, 340 U.S. at 477, and Am. Textile Mfrs. Inst. v. Donovan, 452 U.S. 490, 523 (1983)) (citations omitted).

Thus, if the issue is simply one of whether the board's decision is supported by substantial evidence, the courts defer to the decision of the local authority, provided that the local board picks between reasonable inferences from the record before it. Because the reasonableness of inferences is a legal and not a factual question, this court gives no special weight to the district court's decision on a substantial evidence issue and applies the same standard of deference to the board as does the district court. S.W. Bell, 244 F.3d at 59.

B. Application of the Standards

We start with the board's reasons for its denial, quoted verbatim earlier. It is difficult to know precisely what the board meant by its legal jargon and its apparently purposeful obscurity. The board says that it did not grant the dimensional variances because it lacked the legal authority to do so, and that it denied the watershed permit because it denied the variances. The board specifically refused to make findings as to any other objections, or to make a finding on whether there exists any other location where such construction would be permitted under the by-law. The board did not say anything about the tower's status as a public utility or as a radio tower. Instead, as we understand the order, the board ruled that its by-laws did not allow for wireless communications facilities in CB districts either as a matter of

-14-

right or a use permitted by a special permit. Citing Mass. Gen. Laws ch. 40A, § 10, therefore, the board said it lacked the power to authorize the use because the by-law did not expressly permit variances for wireless communications facilities.

Consulting the by-law, however, we find that it does state that a radio tower is not permitted in a CB district, even by special permit, but that a public utility is permitted in such a district with a special permit. By-law ch. III, § 2.8. Viewing the board's actions in the best light possible, then, it is possible that when it said "wireless communications facility" in the October 27 letters, it meant "radio tower." Perhaps the board meant to revisit its July 18 decision (which had recharacterized the application as for a public utility rather than as for a radio tower) and to re-recharacterize the application as for a radio tower rather than as for a public utility. That is the explanation presented by counsel for the board, who suggests that the district court must resolve whether Omnipoint's tower would be a radio tower or a public utility, and that this is a genuinely disputed issue of material fact that precludes summary judgment for Omnipoint at this time.

There are two obvious problems with this position: one factual and one legal. The factual problem is that the board did not say this (perhaps it was too embarrassing a position to take) and it was the board that told Omnipoint it would republish the application as a public utility application rather than as a radio tower application. As Omnipoint says, the board's position means

it would be left without any alternative. Omnipoint has tried its application both ways -- as a radio tower and as a public utility -- and it was blocked each time. The legal problem is that this is exactly the sort of behavior by a board that demonstrates that it would effectively prohibit the provision of gap-covering wireless services. Setting out criteria under the zoning law that no one could ever meet is an example of an effective prohibition. Amherst, 173 F.3d at 14. The Telecommunications Act preempts such by-law strictures. Accordingly, it no longer matters to our inquiry under the Telecommunications Act whether Omnipoint's proposed tower is a radio tower or a public utility under the by-law. Neither classification will save the board's decision.

Counsel for the board then offers a different rationale: that Omnipoint failed to satisfy the board that there were no better alternative locations. A single denial of an application based on a supportable finding that another location was available would almost certainly fall short of an effective prohibition of wireless services. If the board had in fact made such a finding, it might also be difficult for us to say that the board's decision to deny was unsupported by substantial evidence.[4] But the board

---

[4] Engineer Elijah Luutu, Omnipoint's expert, said that he was unaware of any other feasible location, but used very qualified language:

> I am informed and believe that for reasons such as the inability to obtain a lease or zoning compliance, among others, there are no other feasible sites within or without the Town of Plainville which would allow Voicestream to provide complete service along Routes 1 and 106.

did not take that position in its decision. Instead, it chose as its ground that it had no legal power to authorize a wireless communication tower anywhere in the CB district, regardless of the existence of any alternative site. We judge its decision on those terms.

The district court appears to have considered the lack of evidence from the board[5] about other alternative sites as evidence that further application to the board was futile. On the "effective prohibition" issue, district courts may take evidence beyond the record. Still, even in that context, it is problematic whether courts should rely on the board's failure to come forward with such evidence in court. We doubt that Congress intended local zoning boards to pay for experts to prove that there are alternative sites for a proposed tower, simply to defend themselves from an easily made accusation in court that an individual denial of a permit amounts to an effective prohibition. See S.W. Bell, 244 F.3d at 63 ("For a telecommunications provider to argue that a permit denial is impermissible because there are no alternative sites, it must develop a record demonstrating that it has made a full effort to

The board might well have been justified in finding insufficient an assertion based on information and belief. Such a qualification would make Luutu's statement inadmissible, for example, to support summary judgment in federal court. Fed. R. Civ. P. 56(e).

[5] Where the question is one of substantial evidence, judicial review is based on the written record before the board and there would be no basis to require evidence from the board. The Telecommunications Act firmly keeps initial responsibility for the decision with the board and limits judicial review. It does not provide for a new trial before the district court of issues initially committed to boards, such as whether there are alternative feasible sites.

-17-

evaluate the other available alternatives and that the alternatives are not feasible to serve its customers."). The board gets no comfort from this, however. It expressly refused to decide the adequacy of Omnipoint's evidence about the lack of alternative sites. As we have discussed earlier, we will not uphold a board's decision on grounds that were not stated to the applicant.

Since the board's order cannot be upheld on the grounds it stated, the question becomes one of what should be the appropriate remedy: remand to the board, or affirmance of the injunction. While we can conceive of circumstances in which a remand may be in order -- for example, an instance of good faith confusion by a board that has acted quite promptly -- this case is not a candidate for remand to the board.

Like the district court, we think the only fair inference from the board's words and actions in this case is that whether or not there is a coverage gap, and whether or not there are alternative sites that could fill that coverage gap, the board is not prepared to permit construction on Omnipoint's chosen site. As a result, any further reasonable efforts by Omnipoint are so likely to be fruitless that it is a waste of time even to try. Thus, the record compels the conclusion that the board has effectively prohibited the provision of wireless services in violation of the

Act.[6]    That justifies the remedial order entered by the district court.[7]

## III.

For the reasons given, the judgment of the district court is <u>affirmed</u>.  Costs are awarded against the defendants.

---

[6]    As the district court noted, there is no question in this case of a potential inconsistency between the need to protect sensitive historical or environmental sites and the "no alternative site" theory of effective prohibition. <u>Nat'l Tower</u>, 164 F. Supp. 2d at 188 n.2.  Although the site is technically within a Watershed Protection District, at no stage of the proceedings has the board invoked any substantive environmental concerns.  We reserve the question of the proper analysis were such a conflict present.

[7]    The district court ordered the board "to issue within thirty (30) days of this Order the dimensional and use variances and special permit necessary for the construction of plaintiffs' 170 foot lattice tower and maintenance facility on the locus at 75 Washington Street in Plainville." <u>Nat'l Tower</u>, 164 F. Supp. 2d at 190.  It added that "[t]he Board may condition the issuance of the variances and permit on plaintiffs' compliance with such reasonable environmental conditions as are necessary to  insure the protection of the Town's watershed during the construction and operation of the tower." <u>Id.</u>