CELLCO PARTNERSHIP d/b/a
Verizon Wireless, Plaintiff,

v.

THE TOWN OF GRAFTON, MASSACHUSETTS, the Grafton Planning Board, and Robert Hassinger, Robert Mitchell, Keith Regan, Martin Temple, and Stephen Dunne, as they are the Members of the Planning Board of the Town of Grafton, Massachusetts, Defendants.

No. CIV.A.02–11600–RCL.

United States District Court,
D. Massachusetts.

Sept. 29, 2004.

Joseph C. Cove, Uxbridge, for The Grafton Planning Board, The Town of Grafton, Massachusetts, Keith Regan, Martin Temple, Robert Hessinger, Robert Mitchell, Stephen Dunne, Defendants.

Deborah I. Ecker, Brody, Hardoon, Perkins & Keston, Boston, MA, for The Grafton Planning Board, The Town of Grafton, Massachusetts, Keith Regan, Martin Temple, Robert Hessinger, Robert Mitchell, Stephen Dunne, Defendants.

Sarah Louise McGinnis, Robinson & Cole LLP, Boston, MA, for Cellco Partnership, Plaintiff.

David Bliss Wilson, Robinson & Cole, LLP, Boston, MA, for Cellco Partnership, Plaintiff.

## MEMORANDUM AND ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

LINDSAY, District Judge.

Before the court are cross-motions for summary judgment filed by Cellco Partnership d/b/a Verizon Wireless ("Cellco") and the Town of Grafton ("the Town").

Cellco alleges in its complaint that the Grafton Planning Board (the "Board") wrongfully denied its application for a special permit to place a wireless telecommu-

nications facility at 27 Upton Street, in Grafton, Massachusetts (the "Upton Street Property"). The defendants are the Town; the Board; and Robert Hassinger, Robert Mitchell, Keith Regan, Martin Temple and Stephen Dunne, as they are members of the Board. In counts I and II, Cellco claims that the Board's denial of the special permit amounted to an effective prohibition of personal wireless services, in violation of the Telecommunications Act of 1996 ("TCA"), 47 U.S.C.A. § 332(c)(7)(B)(i)(II), and was not supported by substantial evidence also in violation of the TCA at 47 U.S.C.A. § 332(c)(7)(B)(iii).

Cellco also claims, in count III, that the Board's denial of the specific permit constituted a deprivation of rights secured by federal law, and that a cause of action for money damages exists under 42 U.S.C. § 1983. In count IV, Cellco claims that the Board's refusal to waive or modify certain zoning requirements lacked a rational relationship to a legitimate government interest and thus violated Cellco's substantive due process rights secured by the Fifth and Fourteenth Amendments to the U.S. Constitution, and Part I, Article X of the Massachusetts Declaration Rights. Finally, in count V, Cellco claims that the Board's denial of the special permit was arbitrary and capricious, not based upon the evidence, and in excess of the Board's authority under both Mass. Gen. L. c. 40A and the Grafton Zoning By–Law (the "ZBL").

Both sides have moved for summary judgment on all counts. For the reasons stated below, I GRANT the Town's motion for summary judgment on all counts and DENY Cellco's corresponding motion.

## I. FACTS

### A. Background

Unless otherwise noted, the following facts are undisputed.

Cellco, a personal wireless service provider, is licensed by the Federal Communications Commission to provide cellular telephone services to a geographic area that includes the Town of Grafton, Massachusetts. Cellular telephones work by transmitting a low power signal between a mobile telephone and a wireless telecommunications facility, or "cell site." A cell site consists of antennae mounted on a tall structure such as a tower or building. As a caller moves out of the coverage range of one cell, the signal is "handed off" from the cell site in one cell to the cell site of an adjacent cell. For there to be continuous service, it is critical that the facilities within each cell be located in accordance with radio frequency ("RF") principles, taking into account overall network design. RF design must accommodate such features as the height of the proposed antennae, topographical concerns, the geographic distance and direction of the proposed facility to other facilities in the network, and customer demands for service.

There is currently a "coverage gap" in certain areas of Grafton, including the center of the Town ("Grafton Center"). The existence of a coverage gap means that there is currently not enough signal strength to allow Cellco customers reliably to initiate or hold calls when located within or traveling through these areas of Grafton. Using the RF principles described above, Cellco's RF engineers determined that a facility located within Grafton Center would remedy the coverage gap.

The Board of Selectmen of the Town (the "Selectmen") issued a "request for proposal" ("RFP") for the construction of a telecommunications facility on a portion of the Upton Street Property. After submitting a bid on the RFP, Cellco was awarded a contract, and, on August 27, 2001, entered into a lease with the Town, acting through the Selectmen, for the construction of a wireless telecommunications facil-

ity on the Upon Street property. Paragraph ten of the lease states:

> It is understood and agreed that LESSEE'S ability to use the Premises as contemplated by this Agreement is contingent upon obtaining all of the certificates, permits and other approvals required by any federal, state and local authorities. Notwithstanding the above, LESSEE must apply for and receive a Special Permit from the Planning Board, and nothing in this lease shall be construed as warranty that LESSEE shal [stet] receive any required Special permit from the Planning Board, or required permit from the Building Inspector.

The Upton Street Property is located in a Low Density Residential (R40) zoning district, and is approximately one-quarter mile from the Grafton Common Historic District. It is owned by the Town and is currently used by the Grafton Department of Public Works ("DPW") as a highway maintenance facility, where salt, sand, and public works equipment are stored. A Cumberland Farms convenience store is across the highway, and a wooded area is at the rear of the property.

Under the ZBL, a telephone service provider must apply for a special permit to construct and operate a cell site within an R40 zoning district. In November of 2001, Cellco filed an application with the Board for a special permit to erect a 150–foot monopole and accompanying externally mounted antennae, two dish antennae and certain ground-based equipment, within a fence enclosure, on the Upton Street Prop-

erty. Cellco later modified the proposal, changing the 150–foot monopole with external antennae to a 120–foot pole, with internal antennae, designed to resemble a flagpole ("flagpole design"). Cellco also offered to paint the pole a color of the Board's choice.

A public hearing was opened by the Board on January 14, 2002, and further hearings were held on February 11, March 11, April 8, and April 29 of that year. At the hearings, Cellco presented evidence demonstrating a gap in its service coverage and represented that the proposed tower would decrease the number of towers needed in Grafton because another wireless service would be able to co-locate (i.e., share the tower).[1] At the first hearing, Board member Robert Hassinger suggested that the parties conduct further investigation regarding possible alternative sites. At the February 11th hearing, Cellco submitted the results of a balloon test,[2] in which the company hung blue, yellow, and red balloons at 150, 120, and 100 feet, respectively, to allow the public to view the proposed height of the tower. Hassinger again noted that he was not satisfied that Cellco had exhausted all possible options and suggested alternative sites that Cellco could consider.

At Cellco's expense, the Town retained David Maxson of Broadcast Signal Lab, a wireless engineering and consulting expert, to provide technical assistance to the Town in reviewing Cellco's application. Maxson drafted a report ("Maxson report") summarizing his conclusions as to the evaluation of alternative sites.[3] Max-

---

1. The parties appear to dispute the number of additional facilities that could be accommodated by the flagpole. Cellco suggests it might be able to accommodate two additional facilities; the Town suggests it is only one. It is undisputed that the modification in the design from a monopole to a flagpole reduced the extent to which other providers could co-locate.

2. The balloon test is required by the ZBL. Town of Grafton, Massachusetts Zoning By-Law 5.8.4(e).

3. I will refer to the Maxson report in the discussion below where necessary, but feel no need to belabor the present statement of facts by reciting his conclusions now. I note that the Maxson Report is dated June 4, 2002,

son testified at the hearing on April 29, 2002.

After hearing Maxson's testimony, the Board requested that the hearing be continued until after the annual meeting of the Town Water District Commission on April 30, 2002, in order to give that body an opportunity to vote on whether to permit wireless telecommunications facilities to be placed on facilities or property within its jurisdiction (specifically, on the water standpipe on Pigeon Hill). Cellco's representatives requested that the hearing be closed and stated that Cellco was not interested in other locations.

Prior to the Board's decision denying the special permit, but after the close of the public hearings on April 29, 2002, Cellco submitted a letter from the Massachusetts Historic Commission in which that agency concluded that the proposed flagpole design would have no adverse effect on the historical features of Grafton Center and Grafton Common. Cellco also applied for three waivers (and a fourth that later became moot) in conjunction with its application. All of the applications were denied by the Board.

Throughout the hearing process, a number of abutters to the proposed site and other Grafton residents expressed opposition to the construction of the facility on the Upton Street Property, based on their concerns about the visibility of the monopole from the historic town green.[4] Additionally, the Grafton Historic District Commission ("GHDC") submitted several letters expressing opposition and citing the negative visual impact that the cell tower would have on Grafton Common.

On July 23, 2002, the Board issued an unanimous decision denying Cellco's application for a special permit.

Since 1994, the Board has granted ten applications for special permits for cell sites (eight since the adoption of the By-Law). There are, however, no cell sites in Grafton Center. There has been only one other application for a cell site in Grafton Center, and that application was withdrawn.

## B. The Zoning By-Law

The relevant portions of the ZBL are as follows:

5.8.3 *Site Selection Preferences*

These regulations are written to indicate that the Town of Grafton preferences for facility locations are as follows, in descending order of preference:

1. On existing structures such as buildings, communications towers, smokestacks, utility structures, etc.

2. In locations where existing topography, vegetation, buildings or other structures provide the greatest amount of screening

3. On new towers in the CB, OLI and I zoning districts

4. On government or educational institution structures in the CB, OLI and I zoning districts

5. On government or educational institution structures in the A or R40 zoning districts

6. On government or educational institution structures in the R20, RMF or NB zoning districts

---

after the close of public hearings before the Planning Board on April 29, 2002. The report is not listed as a numbered exhibit in the administrative record, and I will not consider it part of the record when I discuss Cellco's substantial evidence claim.

4. Cellco points out that these residents may not have known at this time that the proposal had been changed to a flagpole.

7. On new towers in the A and R40 zoning districts

8. On new towers in the R20, RMF and NB zoning districts

### 5.8.4 *Additional Submittal Requirements*

b) Site Justification or Appropriateness Statement, including a description of the narrowing process that eliminated other potential sites.

d) Support materials that show: the location of structures of similar or greater elevation within one-half-mile ... radius of the proposed site/parcel; that the owners of those locations have been contacted and asked for permission to install the facility on those structures, and denied, or that such other locations do not satisfy requirements to provide the service needed. This would include, but not be limited to, smoke stacks, water towers, tall buildings, antenna or towers of other wireless communications companies, other wireless communications facilities (fire, police, etc.) And all other tall structures. Failure to present evidence of a good faith effort on the part of the applicant to utilize existing facilities shall be grounds for denial of the application.

### 5.8.5 *Conditions for Granting*

[T]he planning Board shall make findings on which to base its determination on the specific issues of:

b) if the proposed facility is to be located in a residential zoning district ..., whether the applicant has provided substantial evidence that the facility cannot, by technical necessity, feasibly be located in a non-residential zone.

c) whether the proposal would sufficiently screen the facility from view, both through landscaping, placement and design, in order to minimize the visual appearance of the entire facility from areas within a [1,320'] radius of the proposed facility location.

d) whether the proposed facility will be housed within or upon a special structure, which will be architecturally compatible with the surrounding residential area (including, for example, bell tower or church steeple), or whether, by virtue of its design, no such special structure is required in order to minimize the visual impact within a one-quarter-mile (1,320') radius. This provision applies to facilities in a residential (A, R40, R20, or RMF) zoning district ...

### 5.8.6 *General Requirements*

5.8.6.1 Any principal part of the facility ... shall be setback from the nearest property line by a distance of twice the height of the facility ... or a distance of three hundred feet (300'), whichever is greater.

5.8.6.4 A tower shall be of monopole or similarly unimposing design.... The applicant shall successfully demonstrate to the satisfaction of the Board that the proposed facility will have minimal visual impact.

5.8.6.9 All utilities proposed to serve the facility shall be installed underground.

5.8.6.13 Landscaping shall be provided around the base of the facility.... The landscaping shall consist of a planting strip at least 25 feet wide .... Applicants may substitute alternative landscape plans that meet the purposes of this subsection to limit the visual impact of the lower portion of the tower and adjoining accessory facilities for the Board's consideration.

### C. Denial of Cellco's Application

In the relevant portions of its written decision, the Board found:

F9.) That the proposed facility is for the construction of a new tower within a R–40 zoning district, and that a proposal of this type is one of the least preferred

with regard to the list of preferred facility locations in Section 5.8.3 of the ZBL. The Board further finds that a number of alternative sites were identified during the public hearing, of which several appear preferable with regard to Section 5.8.3 of the ZBL.

F13.) That with regard to Section 5.8.4b, the Applicant submitted the letter identified as EXHIBIT 8 of this Decision in response to the requirements for a Site Justification or Appropriateness Statement, as described in said section. No justification of the proposed site was included in this narrative. The Board further finds that although additional sites were mentioned, the description of the narrowing process is inadequate.

F15.) That with regard to Section 5.8.4.d., regarding suitable existing structures, the Applicant submitted material (EXHIBITS 6 and 8 of this Decision) to address this requirement. The Board further finds that this material does not satisfy this requirement. The Board further finds that it provided the Applicant with the opportunity to address these submittal deficiencies during the public hearing process. The Board finds that the Applicant responded to the Board by submitting the letter identified as EXHIBIT 44 of this Decision, which indicated at that time the Grafton Water District Board of Water Commissioners had voted not to allow wireless facilities on the Pigeon Hill Tank or on property of the Water District. The Board further finds, however, that said EXHIBIT indicated that a vote was scheduled to occur on April 30, 2002, which would consider whether to allow wireless facilities on Water District tanks. The Board finds that based on this EXHIBIT, and during the hearing on April 29, 2002, the Board asked the Applicant to consider continuing the public hearing until the next Planning Board meeting in order to learn the outcome of the vote regarding wireless facilities on the Water Commission's tanks, and the possible inclusion of this site as a viable alternative. The Board finds that the Applicant informed the Board at the hearing on April 29, 2002, that they were not interested in further evaluating any alternative sites, referenced in Find # F9 of this Decision, and that the Applicant requested the public hearing be closed. The Board finds that based on the original submittal and the events described above, the Applicant failed to provide a good faith effort to utilize existing facilities. The Board further finds that as noted in Section 5.8.4.d. of the ZBL, such failure constitutes grounds for denial of the Application.

F24.) The Board further finds with regard to Section 5.8.6.4, that the structure is visible from the historic district encompassing the Town Common. It is approximately one quarter mile from the locus of the Town Common and is visible above the skyline from several points of view within the Historic District. Both the 120–foot and 100–foot flagpole designs are visible from the visually sensitive Historic District, and this visibility includes projection above the rooflines of historic buildings. This visual impact is different from that caused by other development in the area outside the District, and is not minimal, and is unacceptable. The Board further finds with regard to Section 5.8.6.4, that the Applicant did not satisfy the requirement to successfully demonstrate to the satisfaction of the Board that the proposed facility will have a minimal visual impact, as required by said Section.

In addition, the Board found that the proposed facility did not meet the minimum setback requirement (F44), was not "generally compatible" with adjacent prop-

erties (F45), and did not protect historic, cultural and scenic landscapes (F48). The Board also found that Cellco did not "provide substantial evidence that the facility cannot, by technical necessity, feasibly be located in a non-residential zone" (F50); that the "proposal [did] not sufficiently screen the facility from view" (F51); and that the "structure will not be architecturally compatible with the surrounding residential area" (F52).

The Board denied each of the four waivers requested by Cellco, and gave its reasons as follows:

1) Respecting the setback requirement: "[T]he setback requirement of [Section 5.8.6.1] serves an important role to minimize impacts to visually sensitive areas, in addition to the buffering and screening requirements of the By-law."

2) Respecting the requirement that accompanying facilities be located underground: "Applicant did not state or explain why the utilities could not be located in accordance with the By-law in a different area on the site, further away from the wetlands."

3) The request for a waiver for external antennae became moot with the revision of the design to resemble a flagpole.

4) Respecting the landscaping requirement: "[T]he Applicant did not satisfy [Section 5.8.6.13] as to substituting alternative landscape plans that meet the purposes of said Section to limit the visual impact of the lower portion of the tower and adjoining accessory facilities."

## II. DISCUSSION

Cellco claims that the Board's denial of its application for a special permit to locate a telecommunications facility on the Upton Street Property was unsupported by substantial evidence and constituted an effective prohibition of personal wireless services in Grafton Center. In response, the Town argues that Cellco's application was denied because Cellco's proposal was inconsistent with the purpose and intent of the ZBL. Moreover, the Town contends that Cellco has not sustained its burden of establishing that the Upton Street Property is the only site from which wireless services may be provided to Grafton Center (*i.e.*, that there are no available, feasible alternatives), and that further reasonable efforts to obtain a permit are so likely to be fruitless that it is futile even to try.

### A. Counts I and II: The Telecommunications Act

The TCA strikes a compromise between the federal interest in establishing a national network of wireless services and the local interest in retaining authority to make zoning decisions. *See Town of Amherst v. Omnipoint Communications Enters., Inc.*, 173 F.3d 9, 13 (1st Cir.1999). The Act preserves local authority to make decisions regarding the siting of telecommunications facilities, but imposes several limitations. *See Second Generation Properties v. Town of Pelham*, 313 F.3d 620, 627 (1st Cir.2002). Two such limitations are (1) that a decision to deny a request to construct a wireless telecommunications facility be in writing and be supported by substantial evidence, 47 U.S.C.A. § 332(c)(7)(B)(iii); and (2) that local regulation may not "prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C.A. § 332(c)(7)(B)(i)(II). The standard of review under the TCA depends upon the nature of the claim. In reviewing a claim made under the substantial evidence limitation, a court must be deferential to the local authority; claims under the anti-prohibition limitation are reviewed *de novo*. *See Southwestern Bell Mobile Sys., Inc. v. Todd*, 244 F.3d 51, 58 (1st Cir.2001).

#### 1. Substantial Evidence

Under the TCA, the denial of a request for a permit to locate a telecommunications

facility must be supported by substantial evidence contained in a written record. *See Nat'l Tower, LLC v. Plainville Zoning Bd. of Appeals,* 297 F.3d 14, 20 (1st Cir. 2002). As in judicial review of any administrative action, the court is limited to the information contained in the administrative record, and "[s]ubstantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *See id.* at 22 (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951)). Essentially, "[t]he TCA's substantial evidence test is a procedural safeguard which is centrally directed at whether the local zoning authority's decision is consistent with the applicable local zoning requirements." *Omnipoint Communications MB Operations, LLC v. Town of Lincoln,* 107 F.Supp.2d 108, 115 (D.Mass.2000).

Simply put, local governments are required to state clearly and in writing the reasons for a denial of permission to locate a telecommunications facility, and those reasons must be supported by substantial evidence in the record. *See Southwestern Bell,* 244 F.3d at 60. In this case, the defendants have satisfied the first requirement. In its written decision, the Board, following the requirements of the ZBL, listed at least three independent reasons for denying Cellco's special permit application:

(1) The 120–foot flagpole design proposed by Cellco would be visible above the skyline from several places within the Historic District. The visual impact of the tower would be non-minimal and incompatible with the architecture of the surrounding area;

(2) Construction of a new tower within a R40 zoning district was one of the proposals least preferred by the ZBL, and Cellco did not adequately consider alternative sites; nor did it demonstrate that the facility, by technical necessity, could

not be located in a non-residential zone; and

(3) Cellco's proposal met neither the setback and landscaping requirements, nor the requirement that accompanying facilities be located underground.

*See* Decision of Grafton Planning Bd., Ex. 8, Aff. of Sarah L. McGinnis, Docket No. 30.

The question now raised is whether the reasons proffered by the Board are supported by substantial evidence in the record. In order to make that determination, I must review the entire record, taking into account evidence that is both supportive of and contradictory to the Board's conclusions. *See Penobscot Air Servs., Ltd. v. FAA,* 164 F.3d 713, 718 (1st Cir. 1999), *quoted in Nat'l Tower,* 297 F.3d at 22 ("The reviewing court must take into account contradictory evidence in the record. But the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.") (internal quotation omitted). Because I think there is substantial evidence to support the Board's conclusion that the tower would have a negative visual impact on Grafton's historic common, I will discuss in depth only the first reason given by the Board.

■ The Board's primary reason for denying Cellco's special permit application was its assessment of the aesthetic impact of locating the facility on the Upton Street Property, within a quarter mile of the Grafton Historic District. Relying on opposition from residents and from the Grafton Historic District Commission, as well as its own independent assessment of the photographs from the balloon test, the Board concluded that the proposed 120–foot flagpole design would have a negative visual impact on the historic Town Common. The Board received evidence of op-

position to the location of a facility on the Upton Street Property, in the form of letters from three residents, oral protest at the April 29th hearing, and a petition signed by 273 Grafton residents. The Board also received a letter from the Grafton Historic District Commission, expressing that entity's unanimous opposition to the tower because it would "significantly alter the hilltop character of the center of Grafton." *See* Exhibit 38 of the administrative record.

The evidence in the record reflects more than "generalized concerns" about the aesthetic appeal of wireless telecommunications facilities. *See Southwestern Bell,* 244 F.3d at 60. Instead, the tower's opponents were concerned about whether the tower was appropriate for the "particular location" contemplated by Cellco's proposal. *See id.* at 61. For example, the authors of one letter noted:

We think the erection of the proposed phone tower will importantly affect the beauty and historical ambience of the Common. For example, when standing at the south-west quarter of the Common, near its perimeter, the vista framed by the Library to the right, and Grafton Inn to the left was dominated by the test balloons. The sight of a tower would [be] clearly inconsistent with the Common. Another example was the view of the balloons over the McGill building, distracting from the character of that classic Greek Revival structure.

*See* Exhibit 28 of the administrative record.

To its credit, Cellco did modify the original proposal for a 150–foot monopole to accommodate the Board's desire for a less conspicuous facility and proposed a "stealth" flagpole design instead. However, unless there are indications that visual impact is a pretext for illegitimate biases against facilities, it is exclusively within the purview of the Town to make aesthetic judgments. *See Amherst,* 173 F.3d at 15; *see also Southwestern Bell,* 244 F.3d at 60–61 ("[T]he Board was entitled to make an aesthetic judgment about whether that impact was minimal, without justifying that judgment by reference to an economic or other quantifiable impact."). The Board reasonably concluded that the flagpole design was not architecturally compatible with the surrounding area and was not sufficiently screened from view. *See Southwestern Bell,* 244 F.3d at 62 (finding there was adequate evidentiary support for denial when the "tower was of a different magnitude than anything else in the vicinity" and was "out of keeping with the residential uses in close proximity to it").

Still, Cellco argues that, in reaching its decision on visual impact, the Board did not take into account any of the evidence in the record that supported Cellco's position. Specifically, Cellco claims that the Board ignored both the letter from the Massachusetts Historic Commission, in which the Commission concluded that the facility would have no adverse effect on Grafton's historical areas, particularly in view of the apparently unsightly Cumberland Farms sign across the street from the Upton Street Property. But, as Cellco conceded at the hearing on the present motions, the fact that these matters were not mentioned in the Board's written decision does not mean that the Board failed to consider them. The Board is not required to keep an exhaustive account of its decisionmaking process. *See Southwestern Bell,* 244 F.3d at 59–60 (noting that "it is not realistic to expect highly detailed findings of fact and conclusions of law," and holding that the written denial need only contain a sufficient explanation to allow meaningful review).

I have considered the record as a whole and find that substantial evidence exists to

support the Board's finding that the tower would have a negative visual impact on the historic green. As Cellco conceded at the hearing before me on the present motion, the Board reasonably could have concluded that the tower was simply more unsightly than the Cumberland Farms sign, or that allowing the sign in the first place was a mistake. Moreover, the letter of the Massachusetts Historic District Commission was submitted to the Board after the close of the evidence. Notwithstanding the late submission, the Board reasonably could have chosen to credit the local historic commission's opinion about visual impact over that of the state commission. The Board also found, and it is conceded by Cellco, that the Upton Street Property is located in a R40 zoning district. The Upton Street Property thus is seventh out of eight, in descending priority, on the site preferences listed in Section 5.8.3 of the ZBL.

The Board found further that Cellco had not complied with Section 5.8.5(b) of the ZBL, which requires the applicant to provide "substantial evidence that the facility cannot, by technical necessity, be located in a non-residential zone." There is ample evidence in the record, including Cellco's failure to comply with certain submittal requirements outlined in the by-law, to support the Board's finding that Cellco failed to make a good faith effort to evaluate alternatives or to utilize existing facilities.[5] I need not rehearse that evidence

here, because I think it sufficient to point out that Cellco's conduct at the hearing on April 29, 2002, adequately supports the Board's conclusion. As noted above, at that final hearing, the Board pointed out that the water standpipe located within the Grafton Water District might provide adequate signal coverage to meet Cellco's objectives and recommended continuing the hearing until after the Water District Board voted on whether to allow telecommunications facilities on its facilities. Instead of agreeing to the continuance as the Board requested, Cellco's representative stated that Cellco was *not interested in further evaluating any alternative sites* and requested the hearing be closed.[6] It was certainly reasonable for the Board to conclude, from Cellco's reaction to the suggestions of a continuance of the hearing and from the absence of contrary evidence in the record, that Cellco had not made a good faith effort to assess all alternative locations for their potential to serve the targeted coverage area.

As a concluding note to the foregoing discussion of substantial evidence, I emphasize that the plan proposed by Cellco was at odds with the provisions of the by-law from the very beginning. The proposed site was next to the lowest on the by-law's preference list, was within a quarter mile of a historic district, and required no fewer than three waivers for the granting of a special permit. From the perspective of the purpose and intent of the by-

5. These submittal requirements include: 1) Section 5.8.4(b), which requires submission of a Site Justification and Appropriateness Statement, including a description of the narrowing process that eliminated other potential sites; and 2) Section 5.8.4(d), which requires extensive documentation of efforts to evaluate all sites of similar height or elevation within a half-mile radius of the proposed site for feasibility and availability.

6. It is irrelevant to the substantial evidence claim that the Water District Board later vot-

ed not to allow the siting of telecommunications facilities within the water district. First, the hearing before the Planning Board was closed on April 29, 2002, at Cellco's request, and no evidence of the Water District Board's decision is contained in the administrative record. Second, the Board was entitled to consider Cellco's refusal to wait until after the meeting of the Water District Board as evidence of Cellco's failure to make good faith efforts to explore alternative sites.

law (which the plaintiffs do not challenge) this was perhaps one of the worst places in Grafton to erect a telecommunications facility. The Board suggested a number of alternatives to Cellco, and only after Cellco refused to consider them further, did the Board ultimately deny the special permit application. Based on the evidence in the administrative record, I GRANT the Town's motion for summary judgment as to count I and DENY the motion of Cellco as to that count.

### 2. Effective Prohibition of Wireless Services

■ The TCA also provides that a state or local government "shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C.A. § 332(c)(7)(B)(i)(II). This anti-prohibition clause "can be violated even if substantial evidence exists to support the denial of an individual permit under the terms of the town's ordinances." *Nat'l Tower,* 297 F.3d at 20.

Review of a zoning board's decision under the anti-prohibition clause is *de novo.* The district court need not accord any deference to the local board and may review evidence that is not contained in the administrative record. *Nat'l Tower,* 297 F.3d at 22; *see also Amherst,* 173 F.3d at 16n.7. Thus, the effective prohibition claim is treated the same as any other motion for summary judgment filed in this court.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of establishing "the lack of a genuine, material factual issue." *Snow v. Harnischfeger Corp.,* 12 F.3d 1154, 1157 (1st Cir.1993), *cert. denied,* 513 U.S. 808,

115 S.Ct. 56, 130 L.Ed.2d 15 (1994) (citing *Finn v. Consolidated Rail Corp.,* 782 F.2d 13, 15 (1st Cir.1986)). Where there are cross motions for summary judgment, each cross motion is considered independently, and, as always, the facts are viewed in the light most favorable to the nonmoving party. *See Continental Cas. Co. v. Canadian Universal Ins. Co.,* 924 F.2d 370, 373 (1st Cir.1991). In this case, Cellco has the burden to establish that the denial of its application for a special permit amounts to an effective prohibition; thus, the defendant need only show that there is an absence of evidence in support of at least one element of the plaintiff's case in, order to succeed on summary judgment. *See Omnipoint,* 107 F.Supp.2d at 117.

■ The plaintiff must establish two elements in an effective prohibition claim: (1) that the Town's zoning decisions and ordinances prevent the closing of significant gaps in the availability of wireless services, *Nat'l Tower,* 297 F.3d at 20; *see also Cellular Tel. Co. v. Zoning Bd. of Adjustment of the Borough of Ho–Ho–Kus,* 197 F.3d 64, 68–70 (3d Cir.1999); *Sprint Spectrum L.P. v. Willoth,* 176 F.3d 630, 643 (2d Cir.1999); and (2) that "from language or circumstances not just that [its] application has been rejected but that further reasonable efforts are so likely to be fruitless that it is a waste of time even to try." *Amherst,* 173 F.3d at 14.

Thus, the starting point of the effective prohibition analysis is always to determine whether there is a substantial gap in service that could be addressed by the proposed facility. "A 'gap' in wireless services exists 'when a remote user of those services is unable to either connect with the land-based national telephone network, or to maintain a connection capable of supporting a reasonably uninterrupted communication.' " *Omnipoint,* 107 F.Supp.2d at 118–19 (quoting *Ho–Ho–Kus,* 197 F.3d at 70). It is undisputed that a

coverage gap exists in Grafton Center, and that Cellco customers cannot reliably initiate or maintain calls when they are in that area. Although there are at least ten wireless telecommunications facilities sited within Grafton, all are located outside Grafton Center, and none enables Cellco to provide service to its customers in Grafton Center. Accordingly, I conclude that the coverage gap in Grafton Center qualifies as significant under the TCA.

▐ Regarding the second element (the futility of further efforts to reach an accommodation with the Town), Cellco argues that the circumstances surrounding the denial of its application for a special permit indicate that applying for another permit would be fruitless. Obviously, the imposition of a blanket ban on cell towers or facilities would violate the TCA's anti-prohibition clause, but so too can an individual zoning decision. *Amherst*, 173 F.3d at 14. The First Circuit has identified two circumstances in which an individual decision may have the "effect" of prohibiting personal wireless services: (1) when a local authority "sets or administers criteria which are impossible for any applicant to meet;" and (2) when the "plaintiff's existing application is the only feasible plan." *Second Generation*, 313 F.3d at 630 (citing *Nat'l Tower*, 297 F.3d at 23–25, for the first proposition and *Amherst*, 173 F.3d at 14, for the second). In either case, "the burden for the carrier . . . is a heavy one." *Amherst*, 173 F.3d at 14. Cellco does not argue that the Town has set criteria that are impossible for any applicant to meet.[7] Instead, Cellco argues that the location of facilities on the Upton Street Property is the only feasible and available plan for remedying the coverage gap.

"For a telecommunications provider to argue that a permit denial is impermissible because there are no alternative sites, it must develop a record demonstrating that it has made a *full effort* to evaluate the other available alternatives and that the alternatives are not feasible to serve its customers." *Southwestern Bell*, 244 F.3d at 63 (1st Cir.2001) (emphasis added). The feasibility of alternatives is a fact-intensive determination, and the plaintiff bears a heavy burden to make the appropriate showing. *See Amherst*, 173 F.3d at 14. Cellco has not sustained that burden, because it has not shown that construction of a single facility on the proposed site is the only "technically feasible" option. *See id.* at 15.

The parties appear to agree that there is no "direct replacement," from an RF perspective, for the Upton Street Property; however, Cellco has not eliminated the possibility that there may be other single or multiple site solutions that will provide adequate coverage to the gap. Other sites suggested by the Town include the steeple of the United Church of Christ located in Grafton Center. Even Jared Robinson, Cellco's RF expert, has acknowledged that the church steeple can accommodate antenna arrays, and that a facility located there would cover the Grafton Center and some of the surrounding neighborhoods. *See* Aff. of Jared Robinson, Ex. 1 at ¶ 11, McGinnis Aff. Although Robinson has stated that the steeple is not tall enough fully to address Cellco's coverage objectives, *see id.*, Cellco seems not to have considered how coverage of areas not addressed by a facility at the church or at other sites proposed by the Town (*e.g.*, the smokestack near the Town Hall office building) might be provided by increasing the signal strength at other Cellco facilities or by seeking permits for more facilities. *See,*

---

**7.** Indeed, Cellco admits that other carriers have successfully sought permits to site facilities in the non-residential zones.

*e.g.,* Dep. of David Maxson at 102–104 (describing how Cellco might be able to reallocate the siting of facilities to cover the gap in Grafton without building a tower at the Upton Street Property).

At the hearing on April 29, 2002, the Town also suggested consideration by Cellco of the State Police tower at 40 Worcester Street. Although Robinson has stated that the State Police tower does not "appear to have sufficient structural strength" to support the necessary equipment, *see* Robinson Aff. at ¶ 8, there is no evidence that Cellco ever tested the structural strength of the tower or sought the opinion of a structural engineer to confirm Robinson's observation. Moreover, there is no evidence that Cellco ever considered the possibility of constructing a replacement tower that would accommodate telecommunications and emergency facilities. *See* Dep. of Robert Hassinger at 85 (stating that the State Police tower was discussed at the hearing, but that it would need to be rebuilt in order to accommodate a cell site). As a final point with respect to the State Police tower, Cellco contends that the State Police are unlikely to agree to sharing a tower with a wireless service provider. There is no evidence, however, that Cellco ever approached the State Police with an offer.

Finally, Cellco does not appear to have adequately considered the possibility of reconfiguring its network, or using cell sites from outside Grafton Center to provide service within Grafton Center. *See Second Generation,* 313 F.3d at 635 (holding that the provider failed to show that other potential solutions, such as a taller tower or a site in another jurisdiction, could not cover the gap in services). Despite the fact that the Board indicated numerous times at the hearings that Cellco should consider whether service could be provided to Grafton Center without building a tower visible from its historic green, only after

Cellco's permit application was rejected and this lawsuit filed did Cellco appear to address the Board's suggestion. Still, Cellco does not take that option seriously. Robinson, in his affidavit in the present proceeding, dismisses alternative network designs summarily, stating that "[i]t would not be possible to provide alternative coverage to address the Grafton Center coverage gap without duplicating coverage provided by existing sites and [future] proposed sites" on existing towers owned by other providers. Moreover, Robinson does not directly contradict the Board's expert, David Maxson, who opines that "judicious restructuring of the network appears to still be possible while there is still no facility on Route 140 toward Upton and the coverage to the north and west is likely to demand additional development anyway. Some existing structures may offer meaningful substitution for portions of the proposed facility coverage." *See* Maxson Report at 5.

The First Circuit's analysis in *Amherst* suggests that a Town might require a provider to rethink its network design. *See Amherst,* 173 F.3d at 14–15. In *Amherst,* the court pointed out that although a provider may desire the most efficient and cost-effective system, using "standard height towers at optimal locations," the provider must be willing to consider and present to localities other feasible alternatives available to them, even those that entail using lower towers and multiple site solutions. *See id.; see also Second Generation,* 313 F.3d at 635 (listing the range of possible solutions that the provider failed to demonstrate were not technically feasible). Additionally, in *Ho–Ho–Kus,* the Third Circuit noted that because the TCA bars local regulation that has the effect of prohibiting *services,* not facilities, it is important to consider whether preexisting facilities located outside the Town could provide adequate coverage inside the Town. 197 F.3d at 71.

Far from foreclosing all of Cellco's options in providing coverage to Grafton Center, the record indicates that the Board tried to work with Cellco by repeatedly suggesting alternative sites Cellco might explore. In offering alternatives, the Board's actions were supererogatory. *See Nat'l Tower,* 297 F.3d at 24 ("We doubt that Congress intended local zoning boards to pay for experts to prove that there are alternative sites for a proposed tower, simply to defend themselves from an easily made accusation in court that an individual denial of a permit amounts to an effective prohibition."). Thus, the record simply does not support any contention that the Board is hostile to wireless telecommunications facilities in general. Rather, the record shows the Board's efforts to avoid constructing a tower that would mar the visual appeal and authenticity of Grafton's historic landmarks, unless Cellco had determined all other alternative to be infeasible.[8] Cellco has made no showing of "such fixed hostility by the Board" as to indicate that the Board's concerns about the historic common are "mere camouflage." *See Amherst,* 173 F.3d at 14. "A single denial of an application based on a supportable finding that another location was available would almost certainly fall short of an effective prohibition of wireless services." *Nat'l*

*Tower,* 297 F.3d at 24. The options that remain available to Cellco may be more difficult and expensive than the proposed single site solution. But the TCA does not offer providers the best or cheapest option.[9] *See generally Amherst,* 173 F.3d at 15. Such a rule would effectively abrogate the local government's authority to control the siting of wireless telecommunications facilities.

In summary, Cellco's proposed site was one of the most objectionable locations in Grafton for a 120–foot tower, and the Board gave Cellco numerous suggestions that would receive favorable consideration by the Board. Thus, it is simply far "too early to give up on the Board." *Id.* at 16. Cellco's "one-proposal strategy may have been a sound business gamble, but it does not prove the Town has in effect banned personal wireless communication." *Id.* at 15 (noting that site planning and procuring leases are both expensive and time-consuming for providers).

Thus, the Town's motion for summary judgment is GRANTED as to count II. The motion of Cellco for summary judgment as to this count is DENIED.

## B. Count III: 42 U.S.C. § 1983

Because I have sustained the Board's decision to deny the special permit and

---

**8.** Cellco's accusations that the Board forced another provider to withdraw its application to locate a facility in Grafton Center is entirely unsupported by any admissible evidence in the record. The only basis for this contention in the record is the affidavit of Kenneth Kelly, president of VitalSite Services, a real estate consulting firm employed by Cellco. Without revealing any basis of personal knowledge, Kelly states only that he is "aware that Nextel withdrew its application after several hearing sessions because the Board had made clear that the application would be denied if it were not withdrawn." Even if true and admissible, there is no indication from this statement that the Board was hostile to Nextel's applications for illegitimate reasons or that any interac-

tions between the Board and Nextel were improper.

**9.** Tellingly, in rejecting the standpipe, Stephen Russell, a property consultant hired by Cellco, vaguely states in his affidavit that the water district property "does not represent an *improvement* over the DPW property ..." Affidavit of Stephen Russell, Exhibit 5 to Affidavit of Sarah McGinnis (emphasis added). Language like this indicates that Cellco may be dismissing alternatives as infeasible because they are not Cellco's first choice. In an effective prohibition claim, the provider must demonstrate that no alternatives are "technically feasible," not just that they are less desirable. *See Amherst,* 173 F.3d at 15.

have concluded that the rejection of Cellco's application for that special permit does not constitute an effective prohibition, there is no TCA violation. Accordingly, there can be no § 1983 claim, because no federal right has been infringed.

Moreover, there is disagreement among the courts as to whether § 1983 is preempted by the enforcement scheme of the TCA itself. *Compare Nat'l Telecomm. Advisors, Inc. v. City of Chicopee,* 16 F.Supp.2d 117 (D.Mass.1998) (holding that a TCA claim may not be asserted under § 1983); with *Sprint Spectrum v. Town of Easton,* 982 F.Supp. 47 (D.Mass.1997) (holding that a TCA claim may be asserted under § 1983). The Third Circuit has held that a TCA claim may not be asserted under § 1983. *See Nextel Partners, Inc. v. Kingston Township,* 286 F.3d 687 (3d Cir.2002). Among the circuits, only the Ninth and Eleventh Circuits have held otherwise, but the Eleventh Circuit opinion was later vacated on other grounds. *See Abrams v. City of Rancho Palos Verdes,* 354 F.3d 1094 (9th Cir.2004); *AT&T Wireless PCS, Inc. v. City of Atlanta,* 210 F.3d 1322 (11th Cir.2000), *vacated on other grounds,* 223 F.3d 1324 (11th Cir.2000). Given my conclusion that no federal right of Cellco has been violated, I need not weigh in here on the question of whether a § 1983 claim lies under circumstances in which a local government improperly denied a wireless carrier permission to erect a telecommunications facility.

The Town's motion for summary judgment is GRANTED as to count III; the corresponding motion of Cellco for summary judgment on this count is DENIED.

### C. Count IV: Substantive Due Process

Cellco claims that the Board's refusal to waive the setback, landscaping, and burying requirements of the ZBL constitutes a violation of substantive due process. As the plaintiffs have cited no cases to support the notion that denial of a waiver request is cognizable as a substantive due process claim, I do not address this claim substantively. *See United States v. Figueroa–Encarnacion,* 343 F.3d 23 (1st Cir. 2003) ("Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace."). Thus, the Town's motion for summary judgment is GRANTED as to count IV; Cellco's motion for summary judgment as to count IV is DENIED.

### D. Count V: Violation of Mass. Gen. L. 40A and the By–Law

Finally, Cellco claims that the Board's denial was arbitrary and capricious, not based upon evidence, and in excess of the Board's authority under Mass. Gen. L. 40A and the ZBL. A decision of the Planning Board can only be disturbed under chapter 40A § 17 if it is based on a legally untenable ground or is unreasonable, whimsical, capricious or arbitrary. *See Subaru of New England, Inc. v. Board of Appeals of Canton,* 8 Mass.App.Ct. 483, 395 N.E.2d 880 (1979). Because I find that the Board's decision was based on substantial evidence, I rule that the decision was not arbitrary and capricious.

Thus, the Town's motion for summary judgment is GRANTED as to count V, and Cellco's motion for summary judgment as to this count is DENIED.

### III. CONCLUSION

The motion for summary judgment of the plaintiff Cellco is DENIED. The motion for summary judgment of the defendant Town of Grafton is GRANTED.

IT IS SO ORDERED.