**SPRINT SPECTRUM L.P., Plaintiff,**

v.

**TOWN OF SWANSEA,**
**et al., Defendants.**

**Civil Action No. 07–12110–PBS.**

United States District Court,
D. Massachusetts.

July 23, 2008.

Bruce A. Assad, Fall River, MA, for Defendants.

Wayne F. Dennison Brown, Rudnick, Berlack & Israels LLP, Boston, MA, for Plaintiff.

## ORDER

PATTI B. SARIS, District Judge.

"I adopt the report and recommendation without objection and allow plaintiff's Motion for Summary Judgment."

### REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

DEIN, United States Magistrate Judge.

### I. INTRODUCTION

Plaintiff Sprint Spectrum L.P. ("Sprint") is a provider of personal wireless communications services. It has brought this action against the Town of Swansea, Massachusetts ("Town" or "Swansea"), its Zoning Board of Appeals ("ZBA" or "Board") and three individual members of the ZBA, challenging the ZBA's denial of Sprint's application for a special permit, a use variance and dimensional variances to construct a wireless communications facility in the form of a 100 foot flagpole-style antenna and associated equipment at the Swansea American Legion. The Board denied Sprint's application solely on the grounds that the Town's Zoning By-Law did not allow for use variances, and that therefore, the Board had no authority to grant Sprint's application. In its complaint, Sprint alleges that the Board's decision to deny its application on the basis of the Town's Zoning By-Law violated the Telecommunications Act of 1996 ("TCA"), which preempts local zoning regulations to the extent those regulations conflict with federal law. In particular, Sprint alleges that

the defendants' decision violated Section 704 of the TCA, 47 U.S.C. § 332(c), because it prohibited or had the effect of prohibiting the provision of personal wireless services in the Swansea area, was not supported by substantial evidence contained in a written record, and unreasonably delayed Sprint's ability to build a personal communications services system in Swansea. (Compl. (Docket No. 1), Count I). Sprint is seeking injunctive relief in the form of an order directing the Board to approve its application for the construction of its proposed facility.

The matter is presently before this court on Sprint's motion for summary judgment (Docket No. 16) on its substantial evidence and effective prohibition claims. It is undisputed that the Board's decision to deny Sprint's application on procedural grounds, without consideration of the substantive requirements of the TCA, violated the TCA. Nevertheless, the defendants argue that Sprint's application either should be denied on the merits or the matter should be remanded to the Board for further consideration.

For the reasons detailed herein, this court finds that the Board is bound by the reasons given in its decision. Since Sprint provided evidence to the Board that there is a significant coverage gap in Swansea and the Board, by its action, prevented the closing of this gap in violation of the TCA, this court recommends to the District Judge to whom this case is assigned that the "Plaintiff's Motion for Summary Judgment" (Docket No. 16) be ALLOWED. Moreover, this court finds that a remand would not be appropriate. Therefore, this court recommends that the court issue an order directing the defendants to issue all necessary permits and approvals for the construction of Sprint's proposed wireless communications facility at the American Legion Site.

## II. STATEMENT OF FACTS [1]

The following relevant facts are undisputed unless otherwise indicated.

### Nature of Sprint's Business

Sprint is a provider of personal wireless services, and holds a license for wireless broadcast from the Federal Communications Commission. (PF ¶¶ 1–2). Its goal is to provide a single integrated offering of wireless personal communications services, and to improve and expand upon available wireless services, by building a nationwide wireless network using digital transmission. (*Id.* ¶ 3). Sprint is actively building out its wireless system in Massachusetts and Rhode Island. (*Id.* ¶ 2).

In order to provide adequate coverage for its network, Sprint must have in place a system of "cell sites" that serve portable wireless communication handsets and mobile telephones. (*Id.* ¶ 19). Each cell site consists of an antenna that is mounted on

---

1. The facts are derived from the following materials submitted by the parties: (1) "Plaintiff's Local Rule 56.1 Statement of Undisputed Facts of Record" (Docket No. 18) ("PF"); (2) the Affidavit of William Hastings (Docket No. 19); (3) "Defendants' Local Rule 56.1 Concise Statement of the Material Facts of Record as to Which it is Contended That There Exists a Genuine Issue to be Tried" ("DR"), which is set forth on pages 1–7 of Docket No. 23; (4) "Defendants Additional Statement of Material Facts of Record as to Which it is Contended That There Exists a Genuine Issue to be Tried" ("DF"), which is set forth beginning on page 7 of Docket No. 23; and (5) exhibits contained in the Administrative Record (Docket No. 15) ("Rec., Ex. ___"). In a separate Memorandum of Decision and Order on Plaintiff's Motion to Strike issued on this date, this court has stricken the Affidavit of David P. Maxson (Docket No. 25) and all portions of the defendants' Local Rule 56.1 statement that cite to Mr. Maxson's Affidavit. Accordingly, this court has not considered any facts or conclusions that are contained in or are based upon Mr. Maxson's Affidavit.

a pole, building or other structure, and is connected to a small equipment cabinet located nearby. (*Id.* ¶ 20). The antenna feeds low power radio signals received from mobile communications devices through electronic devices located in the equipment cabinet, and ultimately, into an ordinary phone line from which the call can be routed anywhere in the world. (*Id.* ¶ 21). In order to maintain effective, uninterrupted service to Sprint telephone users traveling in a given area, there must be a continuous interconnected series of cells, which overlap in a grid pattern approximating a honeycomb. (*Id.* ¶ 24). Also, according to Sprint, each cell site must be constructed in a location that enables it to interact properly with the surrounding cell sites so as to provide reliable coverage throughout the cell. (*See id.* ¶ 25; DR ¶ 25).

### Sprint's Application to the ZBA

On April 2, 2007, Sprint filed an application with the ZBA for permission to construct a wireless communications facility, in the form of a 100 foot flagpole-style antenna and associated equipment, on property owned by the American Legion at 73 Ocean Avenue in Swansea (the "Site"). (PF ¶ 4; Rec., Ex. 6 at 1). The American Legion Site is located in a predominantly residential neighborhood within a rural residential zoning district. (DF ¶ 1; Rec., Ex. 46 at 1). Under Swansea's Zoning By–Law, new wireless communications facilities are permitted within Swansea's Wireless Facilities Overlay District, including at five specific locations set forth in the By–Law. (DF ¶ 13; By–Law at 1327, 1331).[2] They are also allowed upon the issuance of a Special Permit within Swansea's Business B and Limited Commercial and Manufacturing Districts. (DF ¶¶ 2, 12; By–Law at 1328). However, there are no provisions in the Zoning By–

Law that would permit the construction of a wireless communication facility within a residential district. (*See* DF ¶ 1; By–Law).

In its application, Sprint explained to the Board that it was seeking a special permit pursuant to the Zoning By–Law, "as well as a Use Variance because the Site is not located within the [Town's] Business B and Limited Commercial and Manufacturing Districts." (PF ¶ 5; Rec., Ex. 34 at 1). It also stated that it was seeking variances from certain setback and other dimensional requirements, including the requirements that its proposed flagpole be located more than 50 feet from the eastern and southern property boundaries and more than 300 feet from the nearest residential dwelling. (Rec., Ex. 34 at 1, 9; DF ¶ 4). Significantly, Sprint further explained that its existing cell sites in and around Swansea were incapable of providing complete coverage throughout the Town, particularly in the southern portion of Swansea known as the "neck." (Rec., Ex. 34 at 5). According to Sprint, "[t]he Coverage Gap area is located in a high-demand area, including a portion of Route I–195, one of the main thoroughfares in this area. Erection of the stealth flagpole next to the American Legion building would provide wireless communications services in the area of the Coverage Gap, as well as to the surrounding areas." (*Id.*).

In support of its request that the Board grant it a use variance, Sprint noted that "[t]he variance standards for wireless communications facilities have been modified by caselaw interpreting the [TCA] and integrating that statute with local zoning bylaws." (*Id.*, Ex. 34 at 13). Additionally, Sprint asserted as follows:

---

2. The provisions of Swansea's Zoning By–Law governing wireless communications fa-

cilities are attached as Exhibit A to the defendants' memorandum (Docket No. 22).

As will be explained in greater detail at the public hearing, but as shown on the RF Plots, Sprint ... [has] coverage gaps in the area of the Site and must fill those gaps by constructing and operating a wireless communications facility. The Site is a logical location for the stealth flagpole as it is located at the top of a ridge, one of the higher elevations in the area, which will enable greater coverage, and because it is on land owned by the American Legion, an entity that serves a certain portion of the community. Sprint ... [has] conducted an exhaustive search of the area for existing buildings or other sites that would be more suitable, including those suggested by the Zoning Bylaw, but found none. The portion of the Site where the proposed flagpole and equipment will be installed is a portion of the parking lot and vegetated area. The stealth flagpole will be unobtrusive and will not alter the general characteristic of the surrounding area. If Sprint ... [was] required to locate [its] proposed facility in the Business B and Limited Commercial and Manufacturing Districts, [it] could not accomplish [its] coverage objectives.

(*Id.*).

On May 3, 2007, the ZBA held a public hearing to consider Sprint's application. (Rec., Ex. 1). At the hearing, Sprint's counsel described the proposed facility and presented documentation describing existing wireless facilities in the Swansea area, the potential sites analyzed by Sprint, superimposed views of the proposed cell tower from various locations, and areas where Sprint claimed to have a gap in coverage. (*Id.*, Ex. 1 at II). Additionally, Sprint's engineer listed eight alternative locations, and explained that they were not feasible due to the property owner's refusal to allow a cell tower at the site or to the site's inability to service Sprint's coverage gap. (*Id.*, Ex. 1 at III). He also stated that the Town's designated sites were located at too great a distance to fill in the plaintiff's gap in coverage. (*Id.*).

Several abutters spoke at the hearing, and expressed concern about the proposed facility. (*Id.*). Also, in response to a request from the Board, Sprint indicated a willingness to pay for the Board to hire a consultant to assist it in reviewing Sprint's application, as long as there was a cap on the amount and Sprint was assured of the consultant's capability. (*Id.*, Ex. 1 at IV; DF ¶ 19). At the conclusion of the hearing, the Board voted to continue the matter to June 7, 2007. (Rec., Ex. 1 at IV).

At its June 7 hearing, the Board voted to retain David Maxson of Broadcast Signal Lab as its independent wireless consultant. (DF ¶ 6; PF ¶ 8). Pursuant to the Board's request, Sprint agreed to incur the cost of the consulting work. (PF ¶ 8). Mr. Maxson submitted a report to the Board dated July 26, 2007. (Rec., Ex. 19).

In his report, Mr. Maxson described the applicable provisions of Swansea's Zoning By–Law and suggested alternative spots at which Sprint's proposed antenna tower could be constructed at the American Legion Site. (*Id.*, Ex. 19 at 1–2). He also described the coverage plots that Sprint had submitted to the Board showing its existing coverage, the area targeted by Sprint within the "neck" portion of Swansea, and the estimated coverage that Sprint expected to achieve from the proposed facility. (*Id.*, Ex. 19 at 3–4). Mr. Maxson did not question the accuracy of Sprint's evidence regarding the existence or scope of its coverage gap. (*See id.*).

Additionally, in his report, Mr. Maxson provided a description of potential alternatives to the American Legion Site. These included sites that Sprint had already considered and discussed at the May 3, 2007 hearing before the Board, as well as sites that Sprint had not previously addressed.

(*See id.*, Ex. 19 at 4–8). However, Mr. Maxson expressed no opinion as to the actual feasibility of these sites for remedying Sprint's coverage gaps. (*See id.*).

Mr. Maxson also alerted the Board to the possible applicability of the TCA. In particular, Mr. Maxson stated:

> In reviewing the application, the board considers not only the variance requests under state law, but also, if necessary, under the federal Telecommunications Act of 1996 ("TCA"). Advice of counsel familiar with TCA issues is recommended. Fundamentally, the board may need to determine whether a denial of the proposed facility effectively precludes the applicant from providing personal wireless service in the general area of the neck. Based on the information presented in the proceeding, does the board have confidence that carriers can locate new facilities in a fashion that will provide personal wireless services where it is not currently provided? Such locations could either be bylaw-compliant solutions, or solutions which might require some variances and still be more palatable to the community than the proposed facility.

(*Id.*, Ex. 19 at 9–10).

Another public hearing on Sprint's application took place on August 2, 2007. (Rec., Ex. 4). At the hearing, counsel for Sprint responded to Mr. Maxson's report, and discussed the alternative sites that Mr. Maxson had identified, but which Sprint had not considered previously. (*See id.*, Ex. 4 at 1). Sprint's counsel informed the Board that these sites were not available because the owners would not agree to the placement of a wireless communications facility at the property or be-

cause the site was not technically feasible. (*Id.*). Sprint's representatives also presented charts showing areas where coverage was lacking. (*Id.*). According to Sprint's information, the best location for its proposed facility remained the American Legion Site. (*Id.*). However, during the meeting, Sprint realized that it had mistakenly failed to analyze a power plant site identified by Mr. Maxson, and it offered to continue the hearing in order to assess the feasibility of that site.[3] (*Id.*). Accordingly, the parties agreed to further continue the hearing. (*Id.*; DF ¶ 23).

### Advice from Town Counsel

Subsequently, the Chairman of the ZBA, Attorney Charles E. Reed, sought advice from Town Counsel with respect to Sprint's application. In a letter dated August 17, 2007, Attorney Reed notified Town Counsel that the ZBA was considering a petition from Sprint to erect a cell tower in a residential section of Swansea, and he asked Town Counsel to "advise the Board in a general way about what the requirements are under Federal law," and what the Board must consider when reviewing the petition. (Rec., Ex. 18). Town Counsel responded in a letter dated August 22, 2007. Therein, he advised the Board in relevant part as follows:

> M.G.L. c. 40A § 10 states in part:
>
> "Except where local ordinances or by-laws shall expressly permit variances for use, no variance may authorize a use or activity not otherwise permitted in the district in which the land or structure is located...."
>
> The Town of Swansea does not have a zoning by-law permitting use variances. Thus, the Board of Appeals cannot con-

---

**3.** The record indicates that Sprint ultimately determined that the owner of the power plant site was not interested in having a cell tower on the premises, and that the site did not provide sufficient coverage to resolve Sprint's coverage gap. (*See* Rec., Ex. 46 at 5, and referenced e-mails (addressing Dominion Energy's refusal to lease space at Brayton Point Power Station)).

sider the petition before it and must deny it on procedural grounds. It does not have the authority to currently grant use variances.

(Rec., Ex. 8).

Chairman Reed notified his fellow Board members by e-mail of Town Counsel's advice that the ZBA had no authority to grant a use variance, and that therefore, the Board had to deny Sprint's application on procedural grounds. (*Id.,* Ex. 14).[4] In an e-mail response, Reed was told in relevant part, "I'm glad to hear that [Town Counsel] agrees on the use variance issue. I'm ok with just denying it on procedural grounds, but we might want to consider denying it on a number of grounds including procedural and substantive." (PF ¶ 11).

Chairman Reed also notified Sprint's counsel regarding the advice he had received from Town Counsel. (Rec., Ex. 11). Sprint's counsel responded that he did not agree with Town Counsel's opinion, and that he had prepared a memorandum addressing legal issues that had been raised at the prior public hearing. (*Id.*). In that memorandum, which Sprint submitted to the ZBA, Sprint's counsel described the requirements of the TCA and provided citations to applicable case law. (Rec., Ex. 46). He also argued, among other things, that Sprint had provided undisputed evidence to the Board regarding the presence of a significant gap in coverage in the "neck" region of Swansea, and had demonstrated that there was no reasonable alternative to the Site that could remedy Sprint's coverage gaps. (*Id.,* Ex. 46 at 4). He also listed thirteen potential alternative locations to the American Legion Site, and described the reasons that Sprint had rejected each of those options. (*Id.,* Ex. 46 at 4–6).

### The ZBA Decision

A final public hearing on Sprint's application was held on September 6, 2007. (*See* DF ¶ 5; Rec., Ex. 5). At the hearing, Sprint's counsel acknowledged that a use variance would be required for Sprint's proposal, and that the Town's zoning by-laws did not provide for such a variance. (Rec., Ex. 5 at 1). Nevertheless, he argued that, under the TCA, a wireless company must be allowed to site a cell tower in a community if it has coverage gaps, and that if the applicable zoning law does not permit this, it is superseded by federal law. (*Id.*). Sprint's counsel further argued that the plaintiff had met the necessary criteria and that there were no alternative sites to Sprint's proposed location. (*Id.*).

Members of the ZBA and Swansea's Town Counsel also spoke at the hearing. Crawford Kirkpatrick, an alternate member of the ZBA, stated that the Board did not have the authority to change the by-laws, and that the Board rules in accordance with the by-laws. He also stated that the Board should rule by the by-laws, and "if it goes to federal court, let the court decide." (*Id.*). Town Counsel confirmed that Swansea had no use variance by-law, and he advised the Board that there was a possibility that a judge would find the Town's By–Law too restrictive. (*Id.*). He further recommended that the Board "be sure to make specific decisions." (*Id.*).

The Board voted unanimously to deny Sprint's request for a use variance. (*Id.,* Ex. 43 at 2). As set forth in its written decision dated October 9, 2007, the Board

---

4. Defense counsel at oral argument conceded that this advice given by Town Counsel was incorrect.

described the basis for its denial as follows:

> Based upon its inability to grant the relief requested, the Board voted to deny the applicant's request for a use variance. It found that the Town By-law did not grant them any authority to vary the uses in a rural residential district or any other district for that matter. Pursuant to M.G.L. c. 40A § 10, a Board can only grant use variances if a specific by-law allowing them has been approved by the Town Meeting. There being no such by-law in existence, the Board had no other choice but to deny the use variance.

> Based upon the foregoing, the Board voted unanimously to deny the request for a use variance based upon the absence of a by-law that would allow such a grant. It concluded that it could not act in place of the legislative body and grant relief not currently allowed by the zoning by-laws. The applicant was apprised that the Town was in the process of amending their zoning by-laws to include the ability to grant use variances.

(*Id.*). Thus, the ZBA's sole reason for denying Sprint's application was that Swansea's Zoning By–Law makes no provision for use variances, and therefore under state law, the Board has no authority to grant such variances. The Board made no findings regarding Sprint's requests for a Special Permit and dimensional variances, nor did it make any findings relating to Sprint's assertions that a gap in wireless coverage exists in the "neck" portion of Swansea and that construction of a wireless communications facility at the American Legion Site would provide the only feasible means of filling the gap. (*See id.*).

Additional factual details relevant to the court's analysis are provided below.

## III. ANALYSIS

### A. Summary Judgment Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." *Sanchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir.1996) (quotations and citations omitted). A material fact is one which has the "potential to affect the outcome of the suit under the applicable law." *Id.* (quotations and citations omitted).

The moving party bears the initial burden of establishing that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If that burden is met, the opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial. *See id.* at 324, 106 S.Ct. at 2553. The non-moving party "may not rest upon mere allegation or denials of his pleading," but must set forth specific facts showing that there is a genuine issue for trial. *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 841 (1st Cir.1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986)). The court must view the record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. *See O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir.1993). "If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material

fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate." *Walsh v. Town of Lakeville,* 431 F.Supp.2d 134, 143 (D.Mass.2006).

## B. *Requirements of the TCA*

The TCA "works like a scale that, inter alia, attempts to balance two objects of competing weight: on one arm sits the need to accelerate the deployment of telecommunications technology, while on the other arm rests the desire to preserve state and local control over zoning matters." *ATC Realty, LLC v. Town of Kingston, N.H.,* 303 F.3d 91, 94 (1st Cir.2002). *See also Town of Amherst v. Omnipoint Communications Enter., Inc.,* 173 F.3d 9, 13 (1st Cir.1999) (the TCA "is a deliberate compromise between two competing aims—to facilitate nationally the growth of wireless telephone service and to maintain substantial local control over siting of towers."). Accordingly, "[t]he TCA preserves state and local authority over the siting and construction of wireless communication facilities, subject to five exceptions specified in the Act." *Second Generation Props., L.P. v. Town of Pelham,* 313 F.3d 620, 627 (1st Cir.2002). These exceptions are codified at 47 U.S.C. § 332(c)(7)(B), and two of them, the "substantial evidence" requirement and the "effective prohibition" limitation, are relevant here. Specifically, "[i]f a board decision is not supported by substantial evidence, § 332(c)(7)(B)(iii), or if it effectively prohibits the provision of wireless service, § 332(c)(7)(B)(i)(II), then under the Supremacy Clause of the Constitution, local law is pre-empted in order to effectuate the TCA's national policy goals." *Id.*

■ The "substantial evidence" provision of the TCA requires that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). The "substantial evidence" requirement does "not require formal findings of fact or conclusions of law in a board's written decision. Nor need a board's written decision state every fact in the record that supports its decision. By the same token, the board, in its decision, may not hide the ball. Its written denial must contain a sufficient explanation of the reason for the denial to allow a reviewing court to evaluate the evidence in the record supporting those reasons." *Nat'l Tower v. Plainville Zoning Bd. of Appeals,* 297 F.3d 14, 20–21 (1st Cir.2002) (internal punctuation and citations omitted).

■ The "effective prohibition" ban provides that zoning decisions by state or local governments "shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II). Accordingly, "[u]nder the TCA, local zoning authorities must ensure that neither their general policies nor their individual decisions prohibit or have the effect of prohibiting the provision of personal wireless services." *Omnipoint Communications MB Operations, LLC v. Town of Lincoln,* 107 F.Supp.2d 108, 117 (D.Mass.2000). Local zoning policies and decisions "that prevent the closing of significant gaps in the availability of wireless services" within the jurisdiction violate this provision of the TCA. *Nat'l Tower,* 297 F.3d at 20. *See also Omnipoint Communications,* 107 F.Supp.2d at 117. Therefore, "an effective prohibition can exist even where a town allows for the erection of [wireless communications facilities] but subject to criteria which would result in incomplete wireless services within the town, i.e., significant gaps in coverage within the town." *Omnipoint Communications,* 107 F.Supp.2d at 117. The bur-

den of proving that a town's policies or decisions have the effect of prohibiting the provision of personal wireless services is on the applicant. *Id.*

■ In the instant case, the defendants do not dispute that denying Sprint's application on procedural grounds, without determining whether the Board's action resulted in an effective prohibition of wireless services, violated the TCA. Since at least 2002, the courts in this jurisdiction have recognized that local zoning boards cannot simply quote the provisions of state and local zoning law in order to avoid the requirements of the TCA. Thus, in *Nextel Communications of the Mid–Atlantic, Inc. v. Town of Wayland,* 231 F.Supp.2d 396 (D.Mass.2002), the Wayland ZBA denied a wireless communications provider's application for a variance because the applicant was unable to meet the necessary criteria for the issuance of a variance under Massachusetts law. *Id.* at 405. The court determined that while the Board's decision may have reflected a proper interpretation of the general law in Massachusetts regarding variances, state law "is not controlling in the special case of wireless communications facilities." *Id.* at 406. As the court stated, "[t]he Board's variance decision, because it is a local zoning decision regulating the placement and construction of a wireless communications facility, is subject to the federal [TCA]." *Id.* Therefore, the court found, the Board was obligated to consider whether the denial of a variance would violate the TCA by effectively prohibiting wireless services. *Id.* at 406–07. Because the Board had failed to address whether the applicant "would be able to provide sufficient coverage to close the significant gap in coverage[,]" and therefore had "fail[ed] to give due consideration to the requirements of the federal

[TCA,]" the court held that the decision was not supported by substantial evidence. *Id.* at 407. *See also Nextel Communications of the Mid–Atlantic, Inc. v. Town of Provincetown,* No. Civ.A. 02–11646–DPW, 2003 WL 21497159, at *8 (D.Mass. Jun. 26, 2003) (finding that zoning board's decision was not based on substantial evidence where board did not fully consider possibility that enforcement of local zoning by-law might violate the TCA). Since, in the instant case, the ZBA also attempted, improperly, to ignore the requirements of the TCA by parroting Swansea's Zoning By–Law, it too failed to properly support its decision. Therefore, this court recommends that summary judgment be entered in Sprint's favor on its claim that the ZBA decision was not supported by substantial evidence contained in a written record.

**C. There is an Effective Prohibition of Wireless Services**

While recognizing the impropriety of its decision, the defendants nevertheless ask this court to make factual findings that there are no significant gaps in coverage and/or that there are alternative locations for the cell tower so that the denial of Sprint's application did not result in the effective prohibition of wireless services. In the alternative, the defendants request that the matter be remanded for further review by the ZBA. This court finds that neither alternative is available to the defendants.

■ As detailed more fully in this court's Memorandum of Decision and Order on Plaintiff's Motion to Strike,[5]

> [a] board may not provide the applicant with one reason for a denial and then, in court, seek to uphold its decision on

---

5. By this order, this court struck the newly submitted evidence on which the defendants

seek to rely to support the denial of Sprint's application on the merits.

different grounds. That result follows not only from the requirement that the decision provide an adequate explanation to support judicial review, but also from the background understanding of the model of judicial review of administrative actions against which the [TCA] was enacted. That model customarily prohibits a court from affirming an agency on grounds other than those the agency gave in its decision.

*Nat'l Tower LLC v. Plainville Zoning Bd. of Appeals,* 297 F.3d 14, 21 (1st Cir.2002). *Accord Wayland,* 231 F.Supp.2d at 407. Accordingly, the court "will not uphold a board's denial of a permit on grounds that it did not present in its written decision." *Nat'l Tower,* 297 F.3d at 22.

In the instant case, Sprint provided evidence to the Board both of the existence of a coverage gap in the "neck" area of Swansea, and that there are no feasible alternatives to the American Legion Site that would enable Sprint to rectify the gap in coverage. The Board elected to ignore this evidence, and instead ruled that no variance could be granted under any circumstances. Such a decision effectively prohibits the provision of wireless services in the gap area.

The instant case is virtually identical to that presented to the First Circuit in *Nat'l Tower,* decided almost five years before Swansea's decision to follow the same ill-fated procedure. In *Nat'l Tower,* as here, the cellular service provider (Omnipoint) presented evidence to the board of the existence of a gap in coverage and the fact that no alternatives to the proposed site existed. The board made no findings about these facts, but instead denied Omnipoint's variance applications on the grounds that the zoning by-laws made no provisions for use variances and, therefore, that the board lacked authority to grant the requested variances. The Court made it clear that "[a] board may not provide the

applicant with one reason for a denial and then, in court, seek to uphold its decision on different grounds." 297 F.3d at 21. Moreover, the First Circuit found in favor of Omnipoint because "[s]etting out criteria under the zoning law that no one could ever meet is an example of an effective prohibition. The Telecommunications Act preempts such by-law strictures." *Id.* at 23 (internal citation omitted). Here, the ZBA's decision that it had no authority to grant a use variance, notwithstanding Sprint's uncontroverted evidence regarding the lack of feasible alternatives, left Sprint without any solution. Accordingly, Sprint is entitled to summary judgment with respect to its effective prohibition claim.

**D.** *Appropriate Relief for Violations of TCA*

This court's determination that Sprint is entitled to summary judgment on its substantial evidence and effective prohibition claims raises a question as to the appropriate remedy. Sprint asserts that it is entitled to an injunction in the form of an order directing the defendants to issue all approvals necessary for the construction of Sprint's proposed facility at the site. (Pl. Mem. at 13). The defendants disagree and argue that the appropriate remedy is a remand to the ZBA. They contend that a remand is warranted in this case because the Board's decision was made promptly and reflected the ZBA's good faith reliance upon the erroneous advice of Town Counsel. (Def. Mem. (Docket No. 22) at 13–17). Based on the factual circumstances set forth in the record, this court concludes that the Board is not entitled to a remand on the basis of good faith, and that injunctive relief is warranted.

"While prepared to tolerate some delay, Congress made clear in two different provisions [of the TCA] that it expected expe-

ditious resolution both by the local authorities and by courts called upon to enforce the federal limitations." *Town of Amherst,* 173 F.3d at 17 n. 8. "An award of injunctive relief, rather than a remand for further proceedings, best fulfills that statutory goal." *Brehmer v. Planning Bd. of Town of Wellfleet,* 238 F.3d 117, 121 (1st Cir.2001). Accordingly, "in the majority of cases the proper remedy for a zoning board decision that violates the Act will be an order ... instructing the board to authorize construction." *Nat'l Tower,* 297 F.3d at 21–22.

The First Circuit has indicated that there may be circumstances in which a remand may be appropriate, such as where there has been "good faith confusion by a board that has acted quite promptly[.]" *Id.* at 24. However, the record in the instant case does not support the defendants' assertion that the Board's actions amounted to "good faith confusion" that would warrant a remand.

It is undisputed in the instant action that the ZBA sought advice from counsel regarding the applicability of federal law to Sprint's application for permission to construct a wireless communications facility at the American Legion Site. (Rec., Ex. 18). It is also undisputed that Town Counsel provided the Board with erroneous advice, which ran counter to well established law, when he advised it that did not have the authority to grant a use variance under the local zoning provisions and state law, and had to deny Sprint's application on procedural grounds. (*See id.,* Ex. 8). In the instant case, however, the defendants cannot hide behind this legal advice.

Assuming, *arguendo,* that reliance on advice of counsel may constitute a "good faith defense," an issue which this court does not need to decide, the record demonstrates that after the Board received Town Counsel's opinion, counsel for Sprint objected to the opinion and submitted a legal memorandum to the ZBA in which he described in detail the requirements of the TCA and provided numerous cites to relevant case law. (*See* Rec., Exs. 11 & 46). There is no evidence that the Board made any effort to confirm or dispute the information provided in the memorandum, although at least one member of the Board was an attorney. Instead, the Board chose to simply disregard Sprint's legal analysis in favor of Town Counsel's advice, and in the words of one Board member, leave the federal law issues to the court to decide. (*See* Rec., Ex. 5 at 1).

This court concludes that under such circumstances, the ZBA's decision was not based on "good faith confusion." Rather, it reflected the Board's unwillingness to resolve conflicting legal opinions and to clarify its obligations under federal law.[6] The Board had been told throughout the application process that it needed to consider the impact of the TCA on Sprint's application. Nevertheless, it decided to dismiss Sprint's legal analysis without due consideration. Therefore, this court recommends that Sprint's request for injunctive relief be granted.

## IV. *CONCLUSION*

For all of the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the "Plaintiff's Motion for Summary Judg-

---

6. In light of this court's determination that the ZBA's reliance on the advice of Town Counsel did not amount to "good faith confusion" justifying a remand under the TCA, it is unnecessary at this time to address Sprint's arguments that remand would be inappropriate because it would serve no useful purpose and because the Board failed to act promptly and violated the Massachusetts open meeting law. (*See* Pl. Mem. at 14–18).

ment" (Docket No. 16) be ALLOWED and that the court issue an order directing the defendants to issue all necessary permits and approvals for the construction of Sprint's proposed wireless communications facility at the American Legion Site.[7]

June 26, 2008.

**7.** The parties are hereby advised that under the provisions of Fed.R.Civ.P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. *See* *Keating v. Sec'y of Health & Human Servs.,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604–605 (1st Cir.1980); *United States v. Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *see also Thomas v. Arn,* 474 U.S. 140, 153–54, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985). *Accord Phinney v. Wentworth Douglas Hosp.,* 199 F.3d 1, 3–4 (1st Cir.1999); *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–51 (1st Cir.1994); *Santiago v. Canon U.S.A., Inc.,* 138 F.3d 1, 4 (1st Cir. 1998).